*In re* MARRIAGE OF LEON L. LORTON, Petitioner-Appellant, and OPAL B. LORTON, Respondent-Appellee.

Fifth District No. 5—89—0707

■

Opinion filed August 27, 1990.

Burger, Fombelle, Zachry & Rathbun, P.C., of Decatur (Norman J. Fombelle and Kent A. Rathbun, of counsel), for appellant.

Mark E. Ferguson, of Harlan Heller, Ltd., of Mattoon, for appellee.

JUSTICE RARICK delivered the opinion of the court:

Leon L. Lorton appeals from the judgment of dissolution of marriage entered by the circuit court of Fayette County. We affirm.

Leon and Opal Lorton were married in April of 1949. They had been separated for several years, however, by the time Leon filed his petition for dissolution of the parties' marriage in 1985. Opal suffers from Alzheimer's disease and other medical conditions which necessitate her being confined to a nursing home. One of the parties' adult sons has been appointed as the guardian of Opal and her estate.

At the hearing for the dissolution of the parties' marriage in August of 1988, Leon's attorney presented to the trial court the terms of a purported oral settlement agreement. This agreement provided Leon would pay maintenance of $2,300 per month; convey all his real estate excepting 36 acres where his business and home were located to Opal's guardian subject to certain restrictions; and tender $30,500 to Opal's guardian for her benefit plus $4,000 toward her attorney fees. By June of 1989, however, no final judgment had as yet been entered. Through her guardian, Opal petitioned the court to effectuate the settlement agreement as set forth by Leon's attorney. At the hearing on this petition, Leon contended he misunderstood the provisions of the oral agreement. Leon believed he was either to pay Opal monthly maintenance to cover her nursing home bills or give her the majority of the real estate plus a lump sum payment. The trial court ruled the parties had in fact negotiated a settlement agreement and that any misunderstanding on Leon's part was unilateral and therefore did not relieve him from the agreement as expressed in open court.

Leon first argues on appeal the trial court's determination that a settlement agreement existed between the parties is against the manifest weight of the evidence and contrary to law. Leon believes there was no "meeting of the minds," especially when both parties intended that a signed written agreement was a condition precedent to the formation of a contract between them.

■■ It is well settled in Illinois that the law favors the amicable settlement of property rights in cases of marital dissolution. (See, e.g., In re Marriage of Chaltin (1987), 153 Ill. App. 3d 810, 813, 506 N.E.2d 338, 340.) Only if procured by fraud or coercion or if contrary to any rule of law, public policy, or morals will such agreements be set aside. (See In re Marriage of Perry (1981), 96 Ill. App. 3d 370, 373, 421 N.E.2d 274, 276; Crawford v. Crawford (1976), 39 Ill. App. 3d 457, 461, 350 N.E.2d 103, 107.) It is also

well settled that the terms of a settlement agreement are subject to the ordinary rules for the construction of contracts, and that the burden rests on the party asserting the agreement to establish its existence by clear and convincing evidence. (*Chatlin*, 153 Ill. App. 3d at 813, 506 N.E.2d at 340.) We believe Opal has met that burden in this instance.

It is apparent the parties had been negotiating for some time in an effort to reach some sort of amicable property settlement. Two hours prior to the hearing on Leon's dissolution petition, the parties again met with counsel to discuss a possible settlement. At the hearing, after the court granted the dissolution of the parties' marriage, Leon's attorney presented in open court the parties' settlement agreement. Each term of the agreement was set forth orally in detail. At the conclusion of the recitation, counsel for each party stated on the record that what was just presented to the court represented their understanding of the agreement. Leon's attorney then asked Leon if he had heard what was said and if that were his understanding of the agreement. Leon answered "correct." The court concluded the hearing by asking counsel to prepare a written order, approved as to form and content, to be entered by the court. At no time immediately preceding, during or after the hearing did Leon object to the terms of the agreement. It was not until sometime later that Leon claimed the purported agreement did not reflect what he understood the agreement to be. The trial court was well aware of Leon's claims and testimony, but chose to rule in favor of Opal that an agreement did in fact exist. The trial court is in a far better position than we, sitting as a reviewing court looking at a cold record, to determine the credibility of witnesses. (See *In re Marriage of Eltrevoog* (1982), 92 Ill. 2d 66, 71, 440 N.E.2d 840, 842.) Any mistake as to the terms was unilateral on Leon's part and as such has no effect on the validity of the agreement itself. (See *Barth v. Reagan* (1986), 146 Ill. App. 3d 1058, 1067-68, 497 N.E.2d 519, 525; *Sheffield Poly-Glaz, Inc. v. Humboldt Glass Co.* (1976), 42 Ill. App. 3d 865, 870, 356 N.E.2d 837, 841; see also *McCracken Contracting Co. v. R.L. DePrizio & Associates, Inc.* (1984), 122 Ill. App. 3d 680, 687, 462 N.E.2d 682, 687.) To hold otherwise would dilute the binding effect of oral compromises and settlement agreements and permit parties thereto to change their minds at their pleasure. (*Sheffield*, 42 Ill. App. 3d at 870, 356 N.E.2d at 841.) Leon is bound to the agreement he knowingly made in open court. We therefore hold the trial court correctly granted Opal's motion to effectuate the settlement agree-

ment. See *Kalman v. Bertacchi* (1978), 57 Ill. App. 3d 542, 547-48, 373 N.E.2d 550, 554-55; *Sheffield*, 42 Ill. App. 3d at 869-71, 356 N.E.2d at 840-42. *Cf. Perry*, 96 Ill. App. 3d at 373-75, 421 N.E.2d at 277-78; *Crawford*, 39 Ill. App. 3d at 462-63, 350 N.E.2d at 107-08.

 Leon further argues, however, the parties intended that a signed written agreement was a condition precedent to the formation of a binding contract or settlement agreement between them. While it is true that when the reduction of an agreement to writing and its formal execution is intended by the parties as a condition precedent to its completion, there can be no contract until such events occur, even if the actual terms have been agreed upon (see *Chatlin*, 153 Ill. App. 3d at 813, 506 N.E.2d at 340; *Interway, Inc. v. Alagna* (1980), 85 Ill. App. 3d 1094, 1098, 407 N.E.2d 615, 618), we do not believe that such is the case here. The fact that property settlement agreements customarily are put into writing (see *Chatlin*, 153 Ill. App. 3d at 814, 506 N.E.2d at 341), or that the parties believe a formal agreement eventually will be executed, does not necessarily render prior oral agreements "mere negotiations." (*Interway*, 85 Ill. App. 3d at 1097, 407 N.E.2d at 618; see also *In re Marriage of Click* (1988), 169 Ill. App. 3d 48, 54, 523 N.E.2d 169, 173.) Here the terms of the agreement were set forth orally before the court in great detail. Nothing further remained to be resolved. The only thing left to do was to terminate the litigation. The trial court directed counsel to draft an order incorporating the terms of the agreement simply to accomplish that end. (See *Sheffield*, 42 Ill. App. 3d at 869-70, 356 N.E.2d at 840-41. *Cf. Chatlin*, 153 Ill. App. 3d at 814, 506 N.E.2d at 341 (terms of agreement not immediately reduced to writing nor set forth before the court).) The settlement agreement did not need to be reduced to writing or signed by the parties to make it valid and binding. The agreement was clear, certain, and definite in its material provisions, and by its very nature of being presented to the court, enforceable. (See *In re Marriage of Galen* (1987), 157 Ill. App. 3d 341, 344, 510 N.E.2d 597, 599.) Any additional language inserted into Opal's written version of the agreement consisted merely of such terms used in property settlement agreements to fully and completely adjust and settle the rights of the parties. Nothing new was incorporated as Leon now suggests. We therefore see no error in the trial court's determination in this instance.

 We also find no error in the trial court's ruling that the parties' settlement agreement was neither manifestly unfair nor un-

conscionable. The same holds true for the trial court's alleged refusal to consider evidence of Leon's net worth and income flow or evidence of prior settlement demands in making its determination of conscionability. First, settlement offers simply are not relevant to the determination of conscionability. Secondly, the suggestion that the trial court did not consider Leon's financial data as it relates to the issue of unconscionability is not borne out by the record. It is true the court specifically stated at one point in the hearing that it did not care about Leon's financial situation. Leon, however, has taken this comment out of context. The court made such a statement at a time when it was trying to determine whether or not Leon had agreed to the settlement as presented in open court. Conscionability simply was not the issue at that time. The court had before it numerous financial records and considerable testimony pertaining to Leon's financial status. It is apparent that the trial court was aware of such evidence when making its finding on the issue of conscionability. We find no abuse of the trial court's discretion in this instance.

In most settlement agreements, no party obtains everything that he believes equitably to be his. Parties always agree to accept less in lieu of continuing litigation. (*Sheffield*, 42 Ill. App. 3d at 871, 356 N.E.2d at 842.) Here, the same holds true. The agreement between Leon and Opal is not so one-sided as to be unconscionable. (See *In re Marriage of Foster* (1983), 115 Ill. App. 3d 969, 973, 451 N.E.2d 915, 919.) Unfairness alone is not enough to render a settlement agreement unconscionable. (*In re Marriage of Smith* (1987), 164 Ill. App. 3d 1011, 1020, 518 N.E.2d 450, 456.) More importantly, in light of the circumstances of the parties, we do not believe the agreement is unfair.

For the aforementioned reasons, we affirm the judgment of the circuit court of Fayette County.

Affirmed.

HARRISON and HOWERTON, JJ., concur.