*In re* MARRIAGE OF ALEX J. SARRON, Plaintiff-Appellant, and ALINA E. LYONS, Defendant-Appellee.

Third District   No. 3--92—0733

Opinion filed July 22, 1993.—Rehearing denied August 30, 1993.

Frederick A. Bernardi, of Pekin, for appellant.

Reardon, Orr & Dvorak, Ltd., of East Peoria (Carl F. Reardon, of counsel), for appellee.

JUSTICE BARRY delivered the opinion of the court:

In this post-divorce custody dispute, plaintiff Alex Sarron appeals from a judgment order entered in the circuit court of Peoria County incorporating an oral settlement agreement between Sarron and

defendant Alina Lyons which included provisions for custody and visitation. Plaintiff also appeals from the denial of his motion to vacate the judgment without an evidentiary hearing.

Sarron and Lyons were married in 1987, and a daughter, Valerie, was born on September 6, 1988. In February of 1989 Sarron filed a petition for dissolution of the marriage, and the dissolution order was entered in September of 1989. The record is replete with motions, petitions, and responsive pleadings relating to issues of support, custody and visitation and indicating that the parties hotly contested each issue. The custody and visitation issues were complicated by the fact that Sarron, a semi-retired dentist, resides in Peoria while Lyons is an Air Force dentist stationed in New Jersey.

On September 19, 1991, all remaining issues were set for hearing. At that time the parties and their attorneys appeared and announced that they had reached agreement on 11 issues but could not agree concerning some of the costs connected with visitation. Lyon's counsel stated the parties' agreement before the court, indicating that custody would be with Lyons and that Sarron would have liberal visitation; that Sarron's arrearages of court-ordered child support, temporary maintenance, and attorney fees in the sum of $8,000 would be written off, and in exchange, Sarron would assume all travel expenses connected with visitation; that Sarron's future child support would be limited to the minor's benefit under the Social Security Act (now approximately $300 per month); that each party would keep his or her own personal property and would be responsible for his or her own debts and attorney fees; that Sarron would have full access to Valerie's school records and medical records; and that each would keep the other advised concerning any hospitalizations of themselves and reasons therefore.

From the report of proceedings, it is obvious that the trial judge, with the consent of the parties, had consulted a child psychologist about appropriate visitation for a three-year-old child who had had almost no prior contact with her father. The judge advised the parties that Sarron could have four days overnight visitation with Valerie each month, alternating monthly between Peoria and New Jersey, with the first visitation in Peoria to occur at the end of the trial.

The only exception to the overnight visitation was for the initial visitation, for which the court stated that Valerie should stay with her mother at night and the mother should be able to call the child once each day. In addition, Valerie was to be seen by a counsellor at the beginning and end of each visitation. The court stated that the counselling requirement was not negotiated but rather reflected the

court's concern for the best interest of the child. The counsellor's cost is to be shared equally by the parents.

The parties and their attorneys retired to discuss unsettled issues during that day and then returned to open court to report that they had agreed upon a counsellor in Peoria, had agreed that Sarron would pick up and return the child for all visitation, that Sarron's 16-year-old son would not babysit Valerie, and that the child could talk with her mother once each day by telephone while visiting the father. The final issue in dispute concerned Sarron's desire to have custody in the event that Lyons had to be out of the country or away from home for seven days or more. After considerable discussion, the parties agreed that, if Lyons must leave Valerie with someone other than her maternal grandparents during the first year, Lyons would obtain prior court approval. It was disclosed that the maternal grandparents live next door to Lyons and Valerie and assist with Valerie's care on a regular basis. The judge stated that the court would continue to have jurisdiction of the custody issue and would review the visitation arrangements at the end of one year upon the request of either party.

At the conclusion of the discussion of this last issue, the parties reported the name of the counsellor they had agreed upon, and then Sarron's attorney said:

> "I think we have it, Judge, and I'm going to prepare a proposed judgment on all remaining issues, get it to Mr. Reardon, and we will try to work out the language."

After the details of the immediate week's visitation were stated for the record, the court said, "We have got a final order. I approve the terms of that." Sarron's counsel then asked, "Even though we don't do a written order, this will be considered an order?" The court responded, "Right."

Thereafter, Sarron's counsel prepared a draft of the judgment order which was signed by Sarron and by his attorney. Lyons, however, refused to sign because she objected to the phrase "liberal visitation." After agreeing to the words "liberal, regular, and reasonable visitation" as worked out by the attorneys and the court during a telephone conference call, Lyons subsequently filed a petition to enforce the settlement agreement. By then, Sarron had changed his position and opposed the settlement, claiming that Lyons was mentally unstable and should not have custody. The trial court entered a written judgment order on December 10, 1991, incorporating all the provisions of the oral agreement. Two additional provisions in the December 10 order, not mentioned in the record on September 19, required

Lyons to maintain medical insurance on Valerie and allowed Lyons to take her as an income tax exemption.

On December 17, 1991, the trial court entered an additional order disposing of all pending petitions and motions in which the court stated that, with one exception, the judgment order of December 10 contained no substantial changes from the order executed by Sarron on September 21 after the hearing. The only change of substance was to delete a paragraph concerning the retention of jurisdiction by the trial court of all matters related to the child since that was not part of the agreement presented by the parties to the court.

On January 8, 1992, Sarron filed a motion to vacate the orders of December 10 and 17, asserting that no binding agreement was ever reached between the parties, that awarding custody to Lyons was not in the best interest of the child due to Lyons' history of mental instability, and that even if an agreement had been reached, it was unconscionable. As grounds for his unconscionable claim, Sarron alleges, first, that the cost of visitation is so great that he will not be able to afford to visit and, second, that the child psychologist who advised the trial court has changed his mind about requiring one-half the visits to be in New Jersey since being informed of Lyons' mental history. The trial court denied the motion to vacate judgment without hearing evidence. The denial order contained specific findings that an agreement had been reached between the parties, that the agreement was not unconscionable, and that both parties had the mental capacity to enter into the agreement at the time it was entered. This appeal followed.

Section 502 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1991, ch. 40, par. 502 (now 750 ILCS 5/502 (West 1992))) provides for the parties to a dissolution of marriage to enter into either written or oral agreements to dispose of issues relating to property, maintenance, support, custody and visitation. The statute further provides that the terms of the agreement will be binding on the court, except as to support, custody, and visitation of children, unless the court finds the agreement to be unconscionable.

■ In this case, it is clear from the record that the court was very much involved with the parties in working out the details of the agreement relating to support, custody and visitation. Sarron contends that the court's finding that an agreement had been reached was against the manifest weight of the evidence. Sarron relies upon *In re Marriage of Chaltin* (1987), 153 Ill. App. 3d 810, 506 N.E.2d 338, a case involving a disputed property settlement agreement, where the court ruled that the party asserting the agreement has the burden to establish its existence by clear and convincing evidence.

Reviewing the report of proceedings before the trial court on September 19, 1991, we find that the parties undeniably placed before the court their oral agreement settling their differences as to property, debts, maintenance, support, custody, and visitation and that the court approved the terms of the agreement relating to support, custody and visitation. The record simply does not support Sarron's argument.

Sarron also argues that the parties intended the execution of a written agreement to be a condition precedent to a binding contract here and that the court should have heard evidence relating to the parties' intentions before denying the motion to vacate the judgment. (See *In re Marriage of Chaltin*, 153 Ill. App. 3d 810, 506 N.E.2d 338.) Again, the record clearly indicates the contrary to be true. At the conclusion of the presentation to the court, Sarron's attorney requested and received a ruling that the terms agreed to orally would be binding even if not reduced to writing. The fact that the parties expected that a formal agreement eventually would be executed does not invalidate the oral agreement where the terms of the agreement were set forth orally and in great detail before the court. (*In re Marriage of Lorton* (1990), 203 Ill. App. 3d 823, 561 N.E.2d 156.) Here, as in *Lorton*, "The agreement was clear, certain, and definite in its material provisions, and by its very nature of being presented to the court, enforceable." 203 Ill. App. 3d at 827, 561 N.E.2d at 159.

Sarron also contends that the trial court abused its discretion in denying its motion to vacate the judgment without hearing evidence as to the issue of unconscionability of the agreement. Sarron does not claim to have any evidence that was not available to him previously. He rests his claim upon two points: (1) that this agreement constitutes a violation of public policy in that he cannot afford visitation on the terms established and (2) that Lyons is unfit to have custody of Valerie because she is mentally unstable.

A motion to vacate is addressed to the trial court's discretion, and its purpose is to alert the trial court to errors it has committed and to afford an opportunity for their correction. (*Abbey Plumbing & Heating, Inc. v. Brown* (1977), 47 Ill. App. 3d 719, 365 N.E.2d 115.) Here, Sarron seeks to repudiate his oral agreement made and approved in the circuit court. The cost of visitation and Lyons' alleged suicide attempts prior to Valerie's birth were matters he knew or could have known prior to September 19, 1991.

By law, Sarron is bound by his oral agreement in the absence of any claim of fraud. The court did not abuse its discretion in refusing to vacate the judgment previously entered and in refusing to hear evidence in support of his motion. (See *Filko v. Filko* (1970), 127 Ill.

App. 2d 10, 262 N.E.2d 88.) As previously indicated, the oral agreement was presented to the trial court and approved by the court on September 19. The court did not err in entering the judgment orders of December 10 and December 17, and in refusing to vacate these orders when asked to do so.

Future difficulties in implementation of the agreement can be the subject of petitions to modify. We note that an order modifying the visitation arrangements was entered in the trial court prior to this appeal. We believe the trial court here has diligently exercised its discretion in the best interest of the child. We affirm the judgment entered in the circuit court of Peoria County.

Affirmed.

McCUSKEY, P.J., and BRESLIN, J., concur.