*In re* ESTATE OF SARAH GLASSMAN, Deceased (Esther Siegel Schatten, Petitioner-Appellee, v. Eli Glassman, Indiv. and as Ex'r of the Estate of Sarah Glassman, *et al.,* Respondents-Appellants).

First District (6th Division)   No. 1—92—2771

Opinion filed December 10, 1993.—Rehearing denied January 21, 1994.

William J. Harte, Ltd., of Chicago (William J. Harte and Sylvia A. Sotiras, of counsel), for appellants.

Law Offices of Edward U. Notz, P.C., of Chicago (Edward U. Notz, of counsel), for appellee.

PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Respondents, Eli Glassman, individually and as executor of the estate of his deceased mother, Sarah Glassman, and his sister, Rita Mosky, appeal from an order of the trial court, dated July 23, 1992, denying their motion to vacate a judgment order entered May 1, 1992, in favor of petitioner, Esther Siegel Schatten, another daughter of decedent. In its May 1 order, the trial court upheld the terms of what it deemed to be an oral settlement agreement reached by the parties on April 7, 1992, and spread of record on that date, which resolved disputed issues pertaining to the decedent's estate. Respondents contend that the May 1 judgment is against the manifest weight of the evidence. Respondents further contend that, even if the April 7 settlement agreement was enforceable, the trial court nevertheless erred in entering judgment on that agreement where grounds for rescission were disclosed to the court prior to the entry of judgment. Petitioner has filed a cross-appeal challenging the trial court's refusal to allow her to raise objections to the amount and quality of the letter of credit filed by respondents during the pendency of this appeal.

The relevant facts are as follows. The decedent died on May 18, 1986, leaving three children, Eli, Rita and Esther. After the decedent's death, Esther sued Eli, individually and as executor of the decedent's estate, and Rita in various causes of action filed in the probate and chancery divisions of the circuit court of Cook County. Among the causes of action were a will contest proceeding and a recovery citation proceeding in which Esther sought to have Eli and Rita return to the decedent's estate approximately $800,000 worth of Nuveen investments and 10 years of distributions on those investments.

On April 7, 1992, the parties entered into settlement negotiations regarding the pending causes of action. The discussions culminated in an oral settlement agreement, the terms of which were formally spread of record on that date. The parties left for a later date the creation and execution of a mutually agreeable release. An order was

entered on April 7 continuing the matter to April 28, 1992, for the purpose of "reduc[ing] to writing the settlement agreement so spread of record." The trial court contemplated that on April 28, a formal written agreement reflecting the terms agreed to by the parties on April 7 would be submitted for its approval.

The terms of the April 7 agreement included the following: (1) that as and for the settlement of all her claims, petitioner would be paid, within 21 days, the amount of $250,000, free of any tax obligation—interest and penalties inclusive—that the estate or respondents may incur, and that said payment would include the specific bequest to petitioner under the decedent's will; (2) that property commonly referred to as "Margate Terrace" would be immediately placed for sale, with an appropriate, disinterested broker to be agreed upon, and that "every reasonable effort" would be made to sell the property at a price of at least $400,000; (3) that petitioner would receive a one-quarter interest, net after normal commissions, closing costs and prorations, from the sale of the Margate Terrace property, and would be responsible for paying her own capital gains tax on her portion of the distribution; (4) that respondents' appeal of the Margate Terrace property issues would be dismissed; (5) that the chancery action brought by petitioner against respondents would be dismissed; (6) that petitioner would remain manager of the Margate Terrace property at her current management fee of $400 per month until such time as the property was sold; (7) that the respondents would hold petitioner harmless for any taxes, interest and penalties owed by the estate or respondents arising from the failure to file proper State and Federal tax returns; and (8) that after respondents paid petitioner the agreed amount of $250,000 and complied with the other terms of the agreement, petitioner would not adversely interfere with their efforts to dispose of any remaining tax issues or with the estate's resolution of any claims made by the heirs.

Respondents and petitioner each individually acknowledged before the trial court their full agreement with the settlement terms and expressed their understanding that once they left the courtroom the settlement was final and could not be modified.

On the following day, on April 8, petitioner delivered to respondents a suggested long form agreement and release, attempting to incorporate the provisions spread of record the previous day. When she received no response, petitioner on April 23, 1992, filed a motion for entry of judgment on the April 7 agreement. In that motion, petitioner expressed her concern that respondents would not fulfill their obligation to pay her $250,000 by April 28, as agreed. On April 23, respondents tendered to the court a draft of their settlement doc-

ument, as well as a response to petitioner's motion. In their response, respondents argued that petitioner's motion was "premature," and was at best an "improper attempt to obtain the 'cash portion of the settlement' prior to the finalization of other equally significant aspects of the overall settlement agreement." Petitioner's motion was continued to April 28.

On April 28, the parties informed the court that they did not yet have a settlement agreement document signed by them to tender for its approval. An order was entered continuing the matter to May 1. Counsel for the parties continued to negotiate for several hours on April 28 in an effort to arrive at a mutually agreeable written settlement document. On that afternoon, counsel for petitioner disclosed to counsel for respondents that petitioner had sent a letter to the Internal Revenue Service (IRS) on June 3, 1991, wherein she alleged that respondents had wrongfully failed to report for estate and gift tax purposes the transfer of the Nuveen investments to them from the decedent's estate prior to the latter's death, for which they paid no consideration. In that letter, petitioner sought a reward from the IRS for the original information provided to it regarding respondents' alleged wrongdoing.

Petitioner had previously filed a "memorandum in support of impeachment of Eli Glassman" as part of her efforts to protect the decedent's estate and to remove Eli from estate supervision. That memorandum described Eli as having participated in the filing of a wrongful estate tax return and as not having mitigated that wrongful conduct by filing an amended return or paying an additional tax. Further, in 1991, petitioner filed a "petition for order of issuance of citation on Eli Glassman, executor, to show cause why he should not be removed as executor of the [Glassman] estate," alleging that Eli's misdeeds "thereby incurred potentially large interest charges and penalties assessable by reason of the failure to report these assets of the gross estate." Petitioner alleged that the additional taxes due from the estate were $237,000.

At the May 1 hearing, respondents advised the trial court that they first learned of petitioner's letter to the IRS on April 28. Respondents argued that her failure to disclose the letter earlier constituted bad-faith conduct, and consequently nullified the settlement that had been reached by the parties. Respondents expressed particular concern over the reward petitioner had requested from the IRS. Petitioner maintained that her communication to the IRS should have come as no surprise to respondents, in light of the fact that she had complained to the trial court on numerous occasions of their improper filing of estate and gift tax returns.

The trial court determined that petitioner's June 3, 1991, communication to the IRS, and disclosure thereof, was immaterial to the parties' settlement agreement. The trial court stated that the sole purpose of the hearing was to enter judgment on the settlement agreement reached by the parties and spread of record on April 7. Consequently, the court denied respondents' request to file a petition prior to the entry of judgment, stating, "[W]e have already had a settlement agreement entered of record. All we have to do now is enter it in the judgment order. *** It's just a matter of just putting it into written form."

On June 1, respondents filed a motion to vacate the May 1 order, arguing that by petitioner's application for reward she could potentially receive more from them than they had assented to, that a reward payable to petitioner was otherwise in direct conflict with the terms of the "contemplated settlement," and that petitioner had acted in bad faith in failing to disclose the communication prior to or at the April 7 hearing. Petitioner filed a response on July 13. Citing various sections of the Internal Revenue Code and the IRS's Policy and Practice Manual, petitioner pointed out that any reward due her would ultimately be paid out by the IRS, based on a percentage of the amount of taxes recovered. Petitioner also argued that her correspondence to the IRS did not conflict with the terms of the settlement, because the settlement only precluded her from having any *future* involvement or interference in the pending tax issues.

At the July 23, 1992, hearing on the motion to vacate, the trial court reiterated its belief that a settlement agreement had already been entered of record on April 7 with the full consent of the parties and with their understanding that the agreement was final. The court agreed with petitioner that her notification to the IRS and application for reward had no bearing on the settlement agreement because the agreement stated that she would not interfere with respondents' attempt to resolve pending tax matters going forward. The court concluded that what petitioner had done in the past was irrelevant, and because there was no mutual mistake or fraud, the agreement was valid.

Previously, on June 26, 1992, respondents filed a motion requesting that the trial court approve the sale of the Margate Terrace property. The motion was continued to August 5, 1992. On that date, respondents filed their notice of appeal of the trial court's July 23, 1992, order denying their motion to vacate the May 1 judgment. The trial court granted respondents' request for a supersedeas bond in the amount of $300,000, and later approved their request to post a letter of credit in that amount in lieu of bond. Petitioner subsequently filed a cross-appeal challenging this ruling.

On August 18, 1992, the trial court entered an order denying respondents' motion to approve the sale of the Margate Terrace property. The court concluded that it lacked jurisdiction to consider the matter further once respondents filed their notice of appeal challenging the settlement agreement, since bound up in that agreement were the terms and provisions relating to the sale of the property.

Respondents contend that the trial court's July 23 order, denying their motion to vacate the May 1 judgment, should be vacated, and the May 1 judgment reversed, because the agreement reached by the parties on April 7 was not a final settlement, but was only a mutual assent to its general terms.

On review, this court will not disturb the trial court's judgment unless it is contrary to the manifest weight of the evidence. (*Grossinger Motorcorp, Inc. v. American National Bank & Trust Co.* (1992), 240 Ill. App. 3d 737, 607 N.E.2d 1337.) A judgment is not against the manifest weight of the evidence merely because sufficient evidence exists to support a contrary judgment, unless an opposite conclusion is clearly evident. *Flynn v. Cohn* (1991), 220 Ill. App. 3d 393, 581 N.E.2d 30.

■ Where the reduction of an agreement to writing and its formal execution is intended by the parties as a condition precedent to its completion, there can be no contract until then, even if the actual terms have been agreed upon. (*In re Marriage of Chaltin* (1987), 153 Ill. App. 3d 810, 506 N.E.2d 338.) However, the fact parties contemplate that a formal agreement will eventually be executed does not necessarily render prior oral agreements as mere negotiations. *In re Marriage of Lorton* (1990), 203 Ill. App. 3d 823, 561 N.E.2d 156.

■ Upon carefully reviewing the record, we conclude that the trial court properly determined that the execution of a written agreement was not a condition precedent to the formation of a binding settlement. The evidence strongly supports the trial court's finding that the settlement agreement reached by the parties and spread of record on April 7 went beyond "mere negotiations," but represented, rather, an assent by both parties to the final material terms of the settlement. We further concur in the trial court's determination that any misunderstanding on the part of respondents in this regard was unilateral and did not therefore relieve them from the agreement as expressed in open court. *In re Marriage of Lorton*, 203 Ill. App. 3d 823, 561 N.E.2d 156.

The record reveals that after the parties presented the terms of the settlement at the April 7 hearing, the trial court questioned petitioner and respondents individually as to their understanding of what had just occurred. The following colloquoy transpired:

"MR. NOTZ [Counsel for Petitioner]: I would like to say at this point that no settlement is ever an easy one. I would like the record to reflect that as difficult as it was, I appreciate the efforts of Counsel and her clients and the Judge to reach something here short of further litigation.

THE COURT: We all appreciate that and thank you for everybody. All right.

Counsel, your client is in agreement. Miss Schatten, you understand and you are in full agreement with this settlement that's on the record?

MS. SCHATTEN [Petitioner]: Yes.

THE COURT: *You have to understand that once you leave this room, it's foreclosed. The settlement is final.* On that condition you accept the terms of the settlement? You understand them and you are in agreement?

MS. SCHATTEN: Yes.

THE COURT: All right.

MR. NOTZ: Could you ask them the same question?

THE COURT: Yes, I will. Mr. Eli Glassman, *you understand that once the settlement is approved by everybody and you walk out of this room, it's final?*

MR. GLASSMAN [Respondent]: Yes.

THE COURT: *You can't change your mind. You understand the terms* and you are in complete agreement with everything that was discussed on the record?

MR. GLASSMAN: *Yes.*

THE COURT: And Rita Mosky, the same thing?

MS. MOSKY [Respondent]: *Yes.*

THE COURT: All right, thank you very much. I appreciate it." (Emphasis added.)

Believing that all that remained was the entry of a formal judgment reflecting the settlement terms, the trial court issued a written order directing that "[t]he parties *** reduce to writing *the settlement agreement so spread of record* for approval within 21 days of the effective date of the order." No objection to the language of that instruction was ever raised by respondents.

In our view, the unambiguous responses of respondents in the foregoing colloquoy and the clear language of the order specifically requiring that the agreement *so spread of record* be reduced to writing lead to the inescapable conclusion that a formal written agreement was not a condition precedent to a valid and binding settlement resolving the issues relating to the decedent's estate. The agreement, memorialized in writing by a court reporter, was clear, certain, and definite in its material provisions, and, by its very nature of being

presented to the court, enforceable. (*In re Marriage of Lorton*, 203 Ill. App. 3d 823, 561 N.E.2d 156.) That collateral issues such as the language of the parties' releases and the source of the $250,000 to be paid to petitioner were not completely resolved on April 7 does not alter our view that the agreement entered in the record on that date was final. See *Academy Chicago Publishers v. Cheever* (1991), 144 Ill. 2d 24, 578 N.E.2d 981.

Respondents argue, however, that the fact the trial court gave the parties 21 days to work out a *written* agreement demonstrates that such was intended as a condition precedent to a binding contract. We disagree. As stated, the trial court gave the parties until April 28, 1992, to "reduc[e] to writing the *agreement so spread of record on April 7, 1992.*" The trial court repeatedly expressed to the parties its understanding, confirmed by respondents on April 7, that the agreement so spread of record was final and could not be modified beyond that date. We agree with the trial court that nothing further remained to be resolved after April 7 except the termination of the litigation, and that the drafting of a document incorporating the terms of the parties' agreement was simply a step to accomplishing that end.

This, too, the record indicates, was petitioner's understanding. After tendering a draft agreement and release to respondents on April 8 and hearing nothing back from respondents in this regard, petitioner on April 23 filed a motion for entry of judgment on the April 7 agreement. Paragraph 8 of the motion states: "Attached to this motion is a suggested draft order for entry by this Court *effective on the date of settlement: April 7, 1992.*" The draft order incorporated only those terms which had been expressly agreed to by the parties on April 7. This evidence directly contradicts respondents' argument that a written agreement was *mutually* contemplated as a condition precedent to a binding settlement.

Respondents also argue that petitioner's "resistance" to the proposed cash offer to purchase the Margate Terrace property subsequent to the April 7 hearing further illustrates that the parties' settlement remained contingent upon the execution of a final written agreement specifically compelling petitioner to cooperate in the sale of the property. We find this argument to be unpersuasive in light of the fact that the May 1 judgment, which incorporated the letter and spirit of the April 7 settlement agreement, expressly states in paragraph 2 that "[t]he parties *agree to cooperate* to the end that the property commonly known as the Margate Terrace building *** be placed for cash sale."

It is apparent that the primary reason petitioner "resisted" the

sale was because respondents refused to pay the $250,000 due her under the settlement. Petitioner's action was an attempt to prevent respondents from enjoying a benefit under the settlement agreement on the one hand, while on the other refusing to fulfill an obligation under that same agreement. The trial court ultimately denied respondents' motion to approve the sale of the property once they had filed their notice of appeal challenging the April 7 agreement. The court concluded that once the notice was filed, it was divested of jurisdiction to consider any further matters with respect to the property, since the terms and provisions regarding the property were bound up in the agreement which respondents had appealed. The trial court's ruling in this regard was proper. *Waste Management, Inc. v. International Surplus Lines Insurance Co.* (1991), 144 Ill. 2d 178, 579 N.E.2d 322; *Bell Federal Savings & Loan Association v. Bank of Ravenswood* (1990), 203 Ill. App. 3d 219, 560 N.E.2d 1156.

We also reject respondents' contention that the trial court's May 1 judgment is erroneous because it fails to include all of the terms agreed to by the parties on April 7. The trial court expressly stated in its written judgment that "[t]he Report of Proceedings of the hearing on April 7, 1992 is a part of this Order, as if the Report were included herein." Accordingly, any terms not specifically enumerated in the order were incorporated by reference in the foregoing declaration.

■ We next consider respondents' argument that, even if the April 7 agreement was enforceable, the trial court nevertheless erred in entering judgment on the agreement where grounds for rescission were disclosed to the court prior to the entry of judgment. The remedy of rescission of a contract is not granted as a matter of right but, rather, is left largely to the sound discretion of the trial judge (*Farmer v. Koen* (1989), 187 Ill. App. 3d 47, 542 N.E.2d 1326), whose judgment we will not disturb unless that discretion has been abused.

The grounds which respondents raise in support of their claim for rescission are bad faith and misrepresentation on the part of petitioner in failing to disclose, prior to the April 7 hearing, her communication to the IRS, in which she alleged wrongdoing by respondents and requested a reward for the information provided in this regard. It is undisputed that respondents first learned of this communication on April 28, 1992.

Respondents contend that petitioner deliberately concealed her IRS communication from them, with full awareness that they would not have entered into a settlement agreement had they known of such interference in their outstanding tax matters. They further contend that, in the event the IRS approves a reward, they will be

forced to pay petitioner an amount in excess of what they had agreed to pay under the settlement. Respondents allege that petitioner's failure to disclose the communication constitutes bad faith and violates the rule of law which implies in every contract the promise of good faith and fair dealings by the parties. *Honkomp v. Dixon* (1981), 97 Ill. App. 3d 476, 422 N.E.2d 949.

Whether a party has acted in good faith is a question of fact, entrusted for resolution to the trier of fact. (*Honkomp*, 97 Ill. App. 3d 476, 422 N.E.2d 949.) In the present case, the trial court found that petitioner did not act in bad faith in failing to disclose the IRS communication prior to or at the April 7 hearing. It also concluded that the fact a communication was made and a reward sought was immaterial to the settlement reached on April 7 and was not, therefore, a ground for setting the agreement aside.

In setting forth their argument that petitioner acted in bad faith, it is apparent that respondents' main concern centers around the reward sought by petitioner from the IRS.

Contrary to respondents' belief, petitioner would not receive "additional monies" from them by virtue of receiving a reward from the IRS. Under Federal law, any reward due petitioner would be paid, not by respondents, but by the IRS, based on a percentage of taxes recovered. (26 U.S.C.A. § 7623 (1986); IRS Publication No. 733 (July 1980).) Thus, respondents would still only be required to pay petitioner $250,000 (in addition to her 25% interest in the Margate Terrace property) in full and final settlement of her claims against them. Accordingly, respondents' claim of bad faith on this basis must fail.

As to whether petitioner's failure to disclose the mere fact of her past "interference" in respondents' tax affairs constitutes bad faith and/or misrepresentation sufficient to rescind the settlement agreement, we hold that it does not. Petitioner had no duty to disclose her IRS communication because respondents did not ask her if such communication had occurred or otherwise demonstrate concern that she had adversely interfered in their tax matters. The record reveals that at the April 7 hearing, the sole concern voiced by respondents was with respect to petitioner's *future* interference, as the following comments of counsel reflect:

"There is one other concern. *Once the payment and the settlement is made to Miss Schatten*, we just want to make sure that it's agreed on the record that there will be no interference or any involvement by Miss Schatten with Mr. Glassman and Miss Mosky with respect to any taxes that may be owed or their dealing with accountants or their dealing with estate taxes *** *from this time forward*." (Emphasis added.)

In response to this request, counsel for petitioner stated:

"I assume that the parties will cooperate. Putting it the affirmative, the parties will cooperate.

\* \* \*

*To the extent that the IRS may have already received information, that is done.* There will be no *further* communications with the Internal Revenue Service unless, for example, if you called me and said you needed some additional information or something like that. To the extent that there are any future communications from the Internal Revenue Service, I assume that if we receive it, we will pass it on to counsel." (Emphasis added.)

As the foregoing indicates, respondents' concern was a limited one. Petitioner was only requested to satisfy respondents' pointed concern about *future* interference on her part. Absent further inquiry by respondents, we do not find that petitioner was obligated to elaborate on the communications which she strongly suggested to respondents had already occurred with the IRS. While the IRS communication is necessarily displeasing to respondents, under the foregoing circumstances we cannot conclude that its nondisclosure constituted bad faith on the part of petitioner. Nor can we conclude that petitioner intentionally concealed the communication to induce respondents to agree to the settlement.

For the reasons stated, we hold that the trial court did not abuse its discretion in refusing to order rescission of the April 7 settlement agreement, as incorporated in its May 1 judgment.

■ As a final matter, petitioner has filed a cross-appeal challenging the propriety of the supersedeas bond and for the quality and conditions of the security tendered in lieu of bond. We consider the issue moot and immaterial to this appeal. Therefore, we dismiss the cross-appeal.

In summary, we affirm the July 23, 1992, order of the trial court denying respondents' motion to vacate the May 1, 1992, judgment order, which incorporated the settlement reached by the parties and spread of record on April 7, 1992. Further, the cross-appeal is dismissed.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

EGAN and GIANNIS, JJ., concur.