NOTICE

Decision filed 01/30/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 230729-U

NO. 5-23-0729

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| LISA M. SMITH, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Jasper County. |
| | ) | |
| v. | ) | No. 21-L-2 |
| | ) | |
| GEORGE T. GROVE, | ) | Honorable |
| | ) | Kevin S. Parker, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE McHANEY delivered the judgment of the court.
Justices Moore and Boie concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Where the trial court correctly dismissed Lisa M. Smith's negligence claim against George T. Grove because she had previously released him from liability, we affirm.

¶ 2                                   I. BACKGROUND

¶ 3    On March 24, 2021, Lisa M. Smith (Smith) and George T. Grove (Grove) were involved in a motor vehicle accident in Jasper County. Smith alleged that Grove negligently drove his vehicle off of the roadway and then overcorrected, lost control, crossed over the center line of the roadway, and collided with Smith. Both vehicles were destroyed, and Smith and her passenger suffered severe bodily injuries; ultimately, Smith's right leg required amputation above the knee.

1

¶ 4    The vehicle Grove was driving at the time was owned by his mother, Lucinda J. Lewis (Lewis). The vehicle was insured by USAA Casualty Insurance Company (USAA) as a "covered auto." Grove, who resided with Lewis, was listed as an authorized driver of the vehicle.

¶ 5    On April 30, 2021, Smith's attorney sent a demand letter to USAA stating that the letter represented Smith's "formal offer of settlement of all claims against George Thomas Grove ***, USAA Insurance, and your insured relating to the March 24, 2021, motor vehicle collision." The letter contained a "Time Limited Offer of Settlement," to settle all of Smith's claims against Grove and "any other named insured" arising out of the March 24, 2021, motor vehicle accident. Included in this offer of settlement were demands by Smith's attorney:

> (1) that USAA "tender payment of the bodily injury single person policy limits of any and all insurance policies which provided coverage or may have provided coverage for George Grove['s] alleged negligence in said motor vehicle collision on March 24, 2021[,] to my office;"

> (2) "tender proof that the settlement payment tendered actually is the single person policy limits of any and all insurance policies which provided coverage or may have provided coverage for George Grove['s] alleged negligence for the subject motor vehicle collision on March 24, 2021;"

> (3) "tender a check in the amount of One Thousand Five Hundred Dollars ($1,500.00) for the property damage/loss of Ms. Smith's motor vehicle destroyed in the March 24, 2021, motor vehicle collision."

The letter stated that Smith's settlement offer would expire if the payments and proof were not sent to her attorney's office before 5 p.m. on Friday, May 21, 2021, and that Smith "will execute a release of liability for George Grove if the conditions set forth herein are satisfied."

2

¶ 6    On May 18, 2021, USAA responded to Smith's settlement offer. USAA confirmed the policy limits in the policy that covered Grove and included a copy of the policy declarations page as proof. USAA stated that Grove was the named insured's son, a listed driver on the policy, and was a resident relative of the named insured. USAA confirmed that Grove was an insured and stated that "to our knowledge, [Grove] did not have a liability policy of his own." USAA offered Smith its $100,000 policy limits "to resolve these claims." USAA determined that the value of Smith's vehicle as of the date of the accident was $2,946 and sent payments totaling $102,946 to Smith's attorney, along with proposed settlement releases. Smith accepted USAA's offer, signed the releases on June 7, 2021, and cashed the checks.

¶ 7    One of the releases, titled "Release of all Claims," indicted that Smith agreed as follows:

"[to] release, acquit and forever discharge Lucinda J. Lewis[,] *** her heirs, executors[,] and assigns, from any liability now accrued or hereafter to accrue on account of any and all claims or cause[s] of action which I *** now or may hereafter have for personal injuries, damage to property, loss of services, medical expenses, contribution, indemnification, losses or damages of any and every kind or nature whatsoever, now known or unknown or that may hereafter develop by me *** sustained or received on or about March 24, 2021[,] through an automobile accident ***."

The second release was titled "Release for Property Damage" and released and discharged Lewis from all liability for damages to all property resulting from the March 24, 2021, automobile accident, in exchange for USAA's payment of $2,946.

¶ 8    Approximately six months later, Smith filed a lawsuit against Grove based on the same March 24, 2021, motor vehicle accident. The complaint contained one negligence count against

Grove. In response, Grove filed a motion to dismiss pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2020)) arguing alternatively that "the claim set forth in the plaintiff's pleading has been released" (*id.* § 2-619(a)(6)) and/or that the settlement releases Smith signed in June 2021 constituted "affirmative matter avoiding the legal effect of or defeating the claim" (*id.* § 2-619(a)(9)). Alternatively, Grove asked the trial court to enforce the settlement agreement.

¶ 9    In response, Smith argued that there was no settlement between Smith and Grove because the settlement documents prepared by USAA did not specifically include Grove by name, and that use of the term "heir" in the primary release could not be construed to encompass Grove because the term stems from inheritance law, and Lewis was alive when the release was prepared. Smith also argued that there was no settlement agreement to be enforced because the releases were not "mirror images" of her settlement demand, and thus the releases and payments constituted a counteroffer. In support of this counteroffer argument, Smith alleged that the property damage award was larger than she had requested, and her original demand to USAA did not contemplate USAA being a party to the settlement.

¶ 10    On September 20, 2023, the trial court entered its order dismissing Smith's case against Grove on both grounds, finding that the intent of the parties during negotiations was to settle all claims including all claims against Grove, and that the case was settled (*id.* § 2-619(a)(6)) and that the settlement documents constituted affirmative matter otherwise defeating Smith's claim (*id.* § 2-619(a)(9)). Smith filed a timely appeal and for the following reasons, we affirm.

¶ 11                                    II. ANALYSIS

¶ 12    On appeal from a trial court's involuntary dismissal of a complaint pursuant to section 2-619 of the Code of Civil Procedure (*id.* § 2-619), we must determine "whether the existence of a

4

genuine issue of material fact should have precluded the dismissal, or absent such an issue of fact, whether dismissal is proper as a matter of law." (Internal quotation marks omitted.) *Doyle v. Holy Cross Hospital*, 186 Ill. 2d 104, 109-10 (1999). Our review is *de novo*. *In re Estate of Mayfield*, 288 Ill. App. 3d 534, 542 (1997).

¶ 13    Illinois public policy favors settlements. *Pritchett v. Asbestos Claims Management Corp.*, 332 Ill. App. 3d 890, 900 (2002); *In re Marriage of Lorton*, 203 Ill. App. 3d 823, 825 (1990). Unless the settlement was the product of fraud or duress, when parties reach a settlement, the settlement is final. *Id.* Settlements in Illinois are final and binding if there is an offer and an acceptance and the parties have a meeting of the minds about material terms. *Pritchett*, 332 Ill. App. 3d at 896; *Johnson v. Hermanson*, 221 Ill. App. 3d 582, 584-95 (1991).

¶ 14    Here, Smith's settlement demand letter to USAA unequivocally sought "settlement of all claims against George Thomas Grove" and against "any other named insured." Lewis was the only other named insured. Smith's letter to USAA outlines Grove's negligence but makes no specific allegations against Lewis. In response, USAA acknowledged that Grove was an insured under Lewis's policy and that he was the driver at the time of the accident. USAA accepted Smith's settlement demand and tendered two checks and two releases to Smith's attorney. USAA also answered Smith's question regarding whether Grove had additional insurance coverage to the best of its knowledge.

¶ 15                                  A. Acceptance or Counteroffer

¶ 16    Smith claims that USAA's response to her settlement demand was not an acceptance of her demand but amounted to a counteroffer because of certain differences. In support, she notes that USAA paid her more than she demanded for the value of her vehicle. She also argues that

5

USAA's response was a counteroffer because her demand did not name USAA as a party, but USAA included its name in the releases.

¶ 17    Smith is correct that USAA's property settlement check was written for more money than she had demanded. However, USAA was not legally allowed to pay less than the value of Smith's property. See 50 Ill. Adm. Code 919.80(c)(2) (2002) (if the company elects to pay a cash settlement, as opposed to finding a replacement vehicle, the company must use an appropriate methodology "to determine the market value of the insured vehicle"). Although USAA modified its acceptance of Smith's settlement offer by increasing the amount it paid to settle the property claim, we find that Smith accepted USAA's alleged counteroffer by signing the releases and cashing the checks. Additionally, Smith failed to contest the inclusion of USAA in the releases.

¶ 18    Grove argues that once the settlement was reached, the settlement was enforceable regardless of any resulting release documents. *Marriage of Lorton*, 203 Ill. App. 3d at 827. Grove notes that Smith's letter to USAA did not mandate release documents as a condition precedent to an agreement to settle. In *Marriage of Lorton*, the attorneys reported the material terms of the oral settlement reached by the parties. *Id.* at 825. Thereafter, Lorton claimed that he had misunderstood the terms of the settlement. *Id.* Lorton argued that the settlement should not be binding because no settlement document was signed by the parties. *Id.* at 826. The court held that there was a binding settlement despite the lack of any settlement documents, and that the settlement should be based on the terms the parties had outlined on the record. *Id.* The court stated that to hold that there was no binding settlement would "dilute the binding effect of oral compromises and settlement agreements and permit parties thereto to change their minds at their pleasure." *Id.*

¶ 19    We also find the case of *In re Estate of Glassman*, 257 Ill. App. 3d 102, 107 (1993), to be persuasive. There, the details of the settlement were set forth on the court record, including that

the petitioner agreed to accept consideration "for settlement of all her claims." *Id.* at 104. After the settlement outlined on the record, nothing remained to be resolved "except the termination of the litigation" with "the drafting of a document incorporating the terms of the parties' agreement *** simply a step to accomplishing that end." *Id.* at 109.

¶ 20    Although the settlement here was not initially placed on the court record like the settlements in *Lorton* and *Glassman*, the settlement terms were definitively set forth in the letter sent by Smith's attorney to USAA and USAA's subsequent response. Here, the trial court considered the details expressed in the letters, other portions of the record, and applicable law, and concluded that there was a valid settlement, stating: "there is no question in this Court's mind that the intent of the parties during negotiations was to settle all claims including those against Grove."

¶ 21                    B. Trial Court's Consideration of All Evidence

¶ 22    Smith argues that the trial court relied exclusively on her attorney's settlement demand letter to USAA and ignored other evidence. However, the court's order explicitly referred to and quoted USAA's response as well as Smith's settlement demand letter. We reject Smith's argument that the trial court ignored the supportive evidence she presented. Essentially, Smith asked the trial court, and again asks this court, to ignore the language utilized by Smith and USAA in the settlement letters which expressly included Grove as a party to the settlement. We decline Smith's request to consider only the language of the releases and not the language of her settlement offer. The trial court's order dismissing her complaint plainly established that it considered all applicable evidence.

¶ 23                    C. USAA's Use of the Term "Heirs" in the Releases

¶ 24    Smith also argues that Grove could not have been released because his name was not expressly listed in USAA's releases. USAA's release included Lewis and her "heirs, executors and

7

assigns." Smith contends that Grove cannot be Lewis's heir because Lewis was still alive. In support, Smith cites an Illinois administrative regulation outlining estate claims and includes a definition of an "heir" as "any person entitled under the statutes to an interest in property of a decedent." 89 Ill. Adm. Code 102.210(a)(3) (2023). The trial court did not address this argument in its order dismissing Smith's complaint.

¶ 25    We find that the term "heir" can be used prospectively to describe those who would take from the named person, if that person died. "The word 'heirs' is a technical word with a fixed legal meaning, designating those who *would* take a remainder by virtue of the statute of descent." (Emphasis added.) *Depler v. Dyer*, 312 Ill. 537, 541 (1924); see also *In re Estate of Schlenker*, 209 Ill. 2d 456, 462 (2004) ("[Heir] refers to anyone who would take from a person's estate under the statute of descent and distribution if that person died without leaving a will."). We agree with Grove that he meets a prospective definition of an heir, and thus USAA's releases included all claims Smith might have had against him.

¶ 26                                    D. General Release

¶ 27    Grove argues that the two releases constituted general releases and that the parties clearly intended that Grove would be released. When both parties to a settlement are aware of possible claims when a general release is signed, the release language releases all claims. See *Farm Credit Bank of St. Louis v. Whitlock*, 144 Ill. 2d 440, 447 (1991). We find that the facts and analysis of *Whitlock* are instructive. There, the bank issued two loans connected to a family farm. One loan was for the parents and their children, and the second loan was for the children. *Id.* at 443-44. The children defaulted on their loan and, to satisfy the loan, they deeded a parcel of land to the bank. *Id.* Upon receipt of the deed, the bank signed a broad general release naming only the children. *Id.* The bank started foreclosure proceedings against the parents to obtain the farm. *Id.* The parents

8

successfully asserted the general release as a defense to that foreclosure. *Id.* Smith incorrectly argues that the *Whitlock* case only applied to unnamed claims and not to cases involving unnamed claimants. *Whitlock* concluded that the general release given to the children also intended to release their parents. *Id.* at 447.

¶ 28    Here, the settlement was set forth in the record before the trial court. Although the court did not state that it construed the releases as "general releases," it properly concluded that the parties intended Grove to be released by the executed releases. To the extent that Lewis and Grove were unaware that Smith had separate claims against each of them and thus, they were joint tortfeasors—against Lewis for negligent entrustment for allowing Grove to operate her vehicle, and against Grove for negligently operating Lewis's vehicle—when the releases were signed, effect should be given to that general language to release any potential claims not previously asserted. "[W]here both parties were aware of an additional claim at the time of signing the release, courts have given effect to the general release language of the agreement to release that claim as well." *Id.*; see also *Perschke v. Westinghouse Electric Corp.*, 111 Ill. App. 2d 23, 32-33 (1969). We conclude that the evidence establishes that the releases were general releases, and thus, any additional claims and/or claimants were released.

¶ 29                                    E. New Arguments on Appeal

¶ 30    Smith next contends that the USAA settlement documents contained new terms that were inconsistent with her demand, and that these new terms indicated that USAA did not accept her settlement demand. At issue were clauses allowing Lewis to reserve all rights against Smith, and that Smith would indemnify and hold Lewis and USAA harmless from all liens, subrogation claims, and other claims. Smith also argues that USAA did not follow its "custom" and supply an

9

affidavit attesting to all applicable coverages. Finally, Smith raises a new theory on appeal—that Lewis and Grove were jointly and severally liable.

¶ 31     Arguments not raised in the trial court are forfeited and cannot be raised for the first time on appeal. *Evanston Insurance Co. Riseborough*, 2014 IL 114271, ¶ 36; *BMO Harris Bank, N.A. v. Malarz*, 2021 IL App (2d) 190984, ¶ 18. Accordingly, due to forfeiture, we are unable to reach these issues.

¶ 32                                      III. CONCLUSION

¶ 33     Having carefully reviewed the entire record, including the trial court's September 20, 2023, order, we conclude that there was no genuine issue of material fact that would preclude the trial court's dismissal of Smith's complaint. *Doyle*, 186 Ill. 2d at 109-10. We find that the grounds for dismissing the complaint are clear from Grove's motion to dismiss Smith's complaint. 735 ILCS 5/2-619(a) (West 2020). Smith settled her claims against Lewis and Grove. Thus, the court's order dismissing Smith's complaint was appropriate under either or both theories—"That the claim set forth in the plaintiff's pleading has been released ***" (*id.* § 2-619(a)(6)) and/or that the settlement documents constituted "other affirmative matter avoiding the legal effect of or defeating the claim" (*id.* § 2-619(a)(9)).

¶ 34     For the foregoing reasons, the Jasper County circuit court's dismissal of Smith's complaint is affirmed.

¶ 35     Affirmed.

10