**ALLSTATE FINANCIAL CORPO-RATION, a Virginia Corporation, Plaintiff,**

v.

**UTILITY TRAILER OF ILLINOIS, INC., an Illinois Corporation and Gerald Rhodes, Defendants.**

**No. 92 C 3477.**

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 11, 1996.

Jay H. Tressler, James Kenneth Borcia, Tressler, Soderstrom, Maloney & Priess, Chicago, IL, for plaintiff.

Fred J. Beer, Brady & Jensen, Elgin, IL, Alan S. Rutkoff, James Raymond Pranger, McDermott, Will & Emery, Chicago, IL, Raymond E. Rossi, Charles Kent Frederick, Bishop, Rossi & Scarlati, Ltd., Oakbrook Terrace, IL, Donald B. Garvey, Law Offices of Donald B. Garvey & Associates, Ltd., Oak Brook, IL, for Utility Trailer of Illinois, Inc. and Gerald Rhodes.

Fred J. Beer, Brady & Jensen, Elgin, IL, Raymond E. Rossi, Charles Kent Frederick, Bishop, Rossi & Scarlati, Ltd., Oakbrook Terrace, IL, Donald B. Garvey, Law Offices of Donald B. Garvey & Associates, Ltd., Oak Brook, IL, for Utility Trailer of Illinois, Inc.

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

This matter is before the court on plaintiff's Motion to Enforce Settlement Agree-

ment or Set Case for Trial. For the reasons set forth below, the court grants plaintiff's motion.

### Facts

In 1992, plaintiff Allstate Financial Corporation sued defendants, Utility Trailer of Illinois, Inc. ("Utility"), and Gerald Rhodes ("Rhodes"), claiming that defendants, along with others, participated in a scheme to defraud plaintiff in connection with certain accounts receivable based on invoices issued by Utility, (the "Utility invoices") resulting in losses of $477,000.00. The case was set for trial on August 7, 1995.

On July 19, 1995, at a settlement pretrial conference held by the court, the parties reached a settlement agreement pursuant to which: (1) defendant Rhodes would pay Allstate $170,000.00 in installments over a three year period in exchange for a mutual general release of all claims; and (2) the case would be dismissed with prejudice. On August 8, 1995, plaintiff performed its part of the bargain by stipulating to dismiss the case with prejudice, with the court to retain jurisdiction to enforce the terms of the settlement agreement, and an order was entered on that date in conformance with the agreement.

Thereafter, the parties negotiated the specific terms to be incorporated in a written document that would memorialize the settlement agreement. On August 23, 1995, a draft document was prepared, the terms of which differed somewhat from those of the settlement agreement reached at the July 19, 1995 pretrial conference. In particular, under the written settlement agreement, Rhodes was to make one lump sum payment of $152,500.00 to plaintiff within thirty days of the agreement's execution rather than paying $170,000.00 in installments over a three year period.

After the written settlement agreement was drafted, the parties engaged in discussions concerning various indemnity provisions that the defendants demanded from plaintiff to ensure that Rhodes would be free from all future claims by plaintiff or any other individual or entity concerning the subject matter of the instant litigation. During these discussions, plaintiff informed Rhodes that it was a plaintiff in a pending action against Comerica Bank ("Comerica") in a Michigan state court (the "Michigan action") seeking $5,030,417.33 for fraud and misrepresentation concerning, among other things, the Utility invoices. Plaintiff also informed Rhodes at that time that, although the Michigan action had been filed almost two years before and was set for trial, Comerica had made no effort to add either of the defendants in the instant case as defendants or third-party defendants in the Michigan action. Defendants then insisted that plaintiff include in the settlement agreement a complete indemnification for any attorneys' fees, costs and damages that might be incurred in the event Comerica brought an action against defendants as a result of the claims by plaintiff against Comerica in the pending Michigan action. Plaintiff refused defendants' demand for such a broad indemnity and, after lengthy negotiations, the parties reached an impasse. Thereafter, a verdict was returned in the Michigan action against plaintiff and in favor of Comerica. It is unclear from the record before this court whether an appeal has been taken by plaintiff in the Michigan action.

In the instant motion, plaintiff seeks to enforce the terms of the settlement agreement embodied in the written settlement document tendered to defendants. As previously mentioned, that agreement differed from the one reached at the settlement pretrial conference by reducing the amount to be paid to plaintiff from $170,000.00 in installments to a lump sum of $152,500.00. Defendant argues that the written settlement document does not represent the final agreement between the parties and demands inclusion of specific indemnity language in the written agreement.

Significantly, all parties concur that a settlement agreement was reached in chambers at the pretrial settlement conference held on July 19, 1995, and defendants have never requested that the dismissal order of August 8, 1995, be vacated or altered. The defendants, however, seek to avoid performance of the July 19, 1995 agreement without particular indemnity provisions because the settlement amount is being advanced to Rhodes by a third party, who apparently has indicated

that the funds would not be forthcoming so long as there is even a remote possibility that Rhodes could be sued by another party such as Comerica for the Utility invoices. Plaintiff has agreed to reduce the amount of its claim against Comerica and to indemnify defendants only up to the amount of the settlement. Plaintiff will not agree to indemnify defendants against any additional claims or for costs and attorneys' fees that might arise from a potential claim by Comerica against defendants.

## Discussion

■■■ A motion to enforce a settlement agreement is essentially the same as a motion to enforce a contract. *Adams v. Johns–Manville Corp.*, 876 F.2d 702, 709 (9th Cir. 1989); *Herron v. City of Chicago*, 618 F.Supp. 1405, 1409 (N.D.Ill.1985). A federal court has ancillary jurisdiction to enforce a settlement agreement if the parties' obligation to comply with the agreement is part of the dismissal order of the case—either by a separate provision in which the court retains jurisdiction to enforce the agreement or by incorporating the terms of the agreement in the dismissal order. *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375, ——, 114 S.Ct. 1673, 1677, 128 L.Ed.2d 391 (1994); *Lucille v. City of Chicago*, 31 F.3d 546, 548 (7th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1109, 130 L.Ed.2d 1074 (1995). Assuming that it has jurisdiction to enforce a settlement agreement, a federal court will look to the applicable state law in construing the terms of the agreement. *Herron*, 618 F.Supp. at 1409.

■■■ As mentioned above, the parties agree that a settlement had in fact been reached in this court's chambers on July 19, 1995, and recognize that such oral settlement agreements are generally enforceable. *See Estate of Glassman v. Glassman*, 257 Ill. App.3d 102, 195 Ill.Dec. 202, 206, 628 N.E.2d 666, 670 (1 Dist.1993) (finding oral settlement agreement in presence of court to be binding on both parties and to dictate final terms of agreement). In its dismissal order, this court retained jurisdiction to enforce the parties' agreement in chambers and, accordingly, will construe its terms in conformance with Illinois law.[1] *Herron*, 618 F.Supp. at 1409. Illinois law states that ordinary contract construction rules apply to a settlement agreement: the court looks to the parties' conduct in determining their intention to be bound to the terms of the agreement. *Northern Trust Company v. Brentwood North Nursing & Rehabilitation Center*, 225 Ill.App.3d 1039, 167 Ill.Dec. 826, 828, 588 N.E.2d 467, 469 (2 Dist.1992). Based on the parties' representations in chambers on July 19, 1995, the court finds that the parties intended to be bound by the terms of the oral settlement agreement, which included (1) a payment in installments of $170,000.00 in exchange for a mutual general release of all claims and (2) the dismissal of the case with prejudice.

Moreover, as supported by the same evidence and by plaintiff's stipulation to the court's dismissal of this action with prejudice on August 8, 1995, the court finds that the oral settlement agreement reached on July 19, 1995, was a final agreement.[2] The subsequent drafting of the written document was only to memorialize the terms of the oral agreement; neither a written settlement document nor approval of the agreement by any non-party was a condition precedent to the final oral agreement. *Herron*, 618 F.Supp. at 1409 (fact that parties contemplated oral settlement agreement to be reduced to writing at later date did not render oral agreement as mere negotiation).

■■■ A court may rescind an otherwise enforceable settlement agreement if it is demonstrated that there was collusion, fraud, mutual mistake, or tortious or wrongful conduct in procuring the settlement. *Jessee v. Amoco Oil Co.*, 230 Ill.App.3d 337, 171 Ill. Dec. 690, 697, 594 N.E.2d 1210, 1217 (1 Dist. 1992). To rescind a settlement agreement on

---

1. Parties do not contest the applicability of Illinois law to the construction of the settlement agreement made in this court's chambers on July 19, 1995.

2. The parties' subsequent agreement to reduce the amount of the payment and make it payable

in a lump sum rather than in installments is uncontested and therefore will be incorporated into the settlement agreement reached on July 19, 1995.

the basis of fraud or misrepresentation, the party seeking rescission must show both misrepresentation of a material fact and its reliance upon such misrepresentation. *O'Brien v. Omni Pro Electronics,* 1996 WL 459853, at *6 (N.D.Ill.1996). If a fiduciary relationship exists between the contracting parties, a duty to disclose material information exists, and a party's breach of this duty is considered the same as a false statement. *Campbell v. Eagle Service Corp.,* 1995 WL 413459, at *2 (N.D.Ill.1995).

■■■■■ Under Illinois law, a showing of bad faith is also grounds for invalidating a settlement agreement. Illinois courts have declared that every contract implies good faith and fair dealing between its parties. *Beraha v. Baxter Health Care Corp.,* 956 F.2d 1436, 1443 (7th Cir.1992) (citing *Martindell v. Lake Shore Nat'l Bank,* 15 Ill.2d 272, 154 N.E.2d 683, 690 (1958); *First Nat'l Bank of Cicero v. Sylvester,* 196 Ill.App.3d 902, 144 Ill.Dec. 24, 30, 554 N.E.2d 1063, 1069 (1 Dist.1990), *appeal denied,* 133 Ill.2d 555, 149 Ill.Dec. 320, 561 N.E.2d 690 (1990)). The obligation of good faith, however, is not an "independent source of duties for parties to a contract." *Beraha,* 956 F.2d at 1443. Rather, it guides the construction of explicit terms of an agreement. *Id.* Where a claim has been resolved by settlement agreement and the terms of the agreement have been disclosed to the court, there has been a preliminary showing of good faith that creates a presumption of validity. *Amoco Oil Co.,* 171 Ill.Dec. at 696, 594 N.E.2d at 1216. In accordance with the public policy favoring the voluntary resolution of disputes through settlement, any claim of bad faith must be proved by clear and convincing evidence by the party claiming absence of good faith. *Id.*

In this case, defendants do not allege that plaintiff made any misrepresentation with respect to the pendency of other lawsuits or otherwise. Thus, with respect to rescission of the agreement by reason of fraud, the only issue is whether plaintiff had a duty to disclose the existence of the Michigan action at the time the settlement agreement was reached on July 19, 1995.

No case has been cited, and the court can find no authority that would create such a duty in the context of the instant case. The parties are not in a fiduciary relationship, the defendants do not claim that they asked plaintiff to disclose all potential or actual litigation involving the invoices in question, and the Michigan action became a matter of public record prior to the July 19, 1995 settlement conference. *See Glassman,* 195 Ill. Dec. at 208–09, 628 N.E.2d at 672–73 (finding that, in reaching settlement agreement with the defendant, the plaintiff had no duty to disclose its prior communication with the IRS regarding the defendant's wrongdoing because the defendants did not ask the plaintiff about such communication or otherwise demonstrate serious concern about such issue); *Matter of Cotton,* 127 B.R. 287 (Bankr. M.D.Ga.1991), *aff'd, In re Cotton,* 136 B.R. 888 (M.D.Ga.1992), *rev'd on other grounds,* 992 F.2d 311 (11th Cir.1993) (finding that bank, in reaching settlement with debtor, had no duty to disclose its filing of lawsuit against vice-president for wrongful acts, including those related to debtor's account, because lawsuit against vice-president was a matter of public record and debtor did not ask bank about such action).

With respect to the implied covenant of good faith, the parties in the instant case are adversaries and bargained at arm's length in reaching a settlement agreement. As already stated, defendants, although they had an opportunity to do so, did not ask plaintiff about all potential or actual litigation involving the invoices at issue in this case, and the Michigan action became a matter of public record prior to the July 19, 1995 settlement conference. Based on these findings and the fact that defendants make no other allegations of bad faith, this court finds that the agreement between parties reached at the July 19, 1995 pretrial conference was entered into in good faith, was performed by plaintiff, and is enforceable by the court.

### Conclusion

For the reasons stated above, the court finds that the settlement agreement reached at the pretrial conference on July 19, 1995, as modified by the parties with respect to the amount and terms of payment, is enforceable. The court therefore grants plaintiff's Motion to Enforce Settlement Agreement

and orders defendants to pay the sum of $152,500.00 to plaintiff within thirty days of the date of this order, upon which payment the parties will be mutually and generally released from any and all claims they may have against each other. Plaintiff is ordered to prepare a final judgment order incorporating this order and including appropriate release language, for presentation to the court on September 18, 1996, at 9:00 a.m.