**Betty Jean PORTER, Plaintiff,**

v.

**CHICAGO BOARD OF EDUCATION, Defendant.**

No. 96 C 5635.

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 19, 1997.

**1130**

Gary Brian Katz, Benjamin & Shapiro, Ltd., Chicago, IL, for plaintiff.

Kathleen Marie Gibbons, Bd. of Educ. of City Chicago, Law Dept., Marilyn F. Johnson, Taryn Springs, Sarah Ruth Carlin-Rosenblum, Chicago, IL, for defendant.

### MEMORANDUM OPINION AND ORDER

LEVIN, United States Magistrate Judge.

This matter is before the court on Defendant's motion to enforce the settlement agreement. For the reasons set forth below, the court grants Defendant's motion.

### BACKGROUND

On September 5, 1996, Plaintiff, a teacher formerly employed by Defendant, filed this action against Defendant claiming that De-

fendant violated the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and the Age Discrimination in Employment Act, 29 U.S.C. § 630(b) *et seq.* On March 12, 1997, the parties engaged in a pre-trial settlement conference before Magistrate Judge Morton Denlow. In attendance at the March 12 conference were Plaintiff, Plaintiff's attorney, an attorney for the Chicago Teachers Union (who represented Plaintiff in a related arbitration) and Defendant's attorneys. At the conclusion of the conference, the aforementioned parties conducted proceedings on the record before the Magistrate Judge.

On the record, the Magistrate Judge preliminarily stated, "as a result of the settlement conference the parties have arrived at a settlement of this litigation and also of a pending arbitration." At the Magistrate Judge's request, Defendant's attorney stated the monetary terms of the agreement: (1) that the Defendant Board would pay Plaintiff back pay from September 1, 1995 through November 30, 1996 in full settlement of a pending arbitration; and (2) that the Defendant Board would pay Plaintiff a lump sum amount equivalent to the pay Plaintiff would have earned from December 1, 1996 through April 30, 1997 in settlement of the pending federal lawsuit. In addition, Defendant agreed to submit a list of the most current openings in the Chicago Public School system within Plaintiff's certification to Plaintiff.[1]

Plaintiff's private counsel and counsel for the Chicago Teachers Union agreed to the settlement on the record. Plaintiff was present during the proceedings on the record. In her affidavit filed herein, Plaintiff expressly acknowledges that "I did agree to settle the case" at the subject settlement conference.

The next day, March 13, 1997, Defendant's attorney sent a letter to Plaintiff's attorney to "memorialize the settlement agreement reached yesterday." Attached to that letter was an organized list of teacher vacancies in the Chicago Public Schools.[2] The following day, March 14, 1997, Plaintiff's attorney

---

1. The parties agree that this entailed sending a vacancy listing to Plaintiff and that, in the event a principal wanted to hire Plaintiff, the Defendant would approve Plaintiff's hiring.

2. On April 22, 1997, Defendant provided Plaintiff with another list of vacant teaching positions in the Chicago Public Schools.

wrote a responsive letter to Defendant's attorney essentially expressing his agreement with the terms of the settlement set forth in defense counsel's March 13, 1997 letter.

It is undisputed that the total amount due Plaintiff under the settlement is $90,977.05.[3] However, Plaintiff has refused to sign the executed written settlement documents initially tendered by the Defendant on April 10, 1997. Defendant thus moves to enforce the settlement agreement.

### ANALYSIS

■ "A motion to enforce a settlement agreement is essentially the same as a motion to enforce a contract." *Allstate Fin. Corp. v. Utility Trailer of Illinois, Inc.*, 936 F.Supp. 525, 528 (N.D.Ill.1996). Under applicable law, oral settlement agreements are enforceable. *See, e.g., Wilson v. Wilson*, 46 F.3d 660, 666 (7th Cir.1995) (oral settlement agreements are enforceable where "there is clearly an offer and acceptance of the compromise and a meeting of the minds as to the terms of the agreement"); *Glass v. Rock Island Refining Corp.*, 788 F.2d 450, 454 (7th Cir.1986) (oral settlement agreements are enforceable against a plaintiff who "knowingly and voluntarily agreed to the terms of the settlement or authorized his attorney to settle the dispute"). *See also Hyde Park Union Church v. Curry*, 942 F.Supp. 360, 363 (N.D.Ill.1996) ("Oral settlement agreements that are made in open court and on the record are also enforceable by a district court.").

The issue before the court is whether the parties reached a binding oral agreement before the Magistrate Judge on March 12, 1997. After a careful review of the record, this court finds that the parties did reach an oral agreement that: (1) Defendant would pay Plaintiff back pay from September 1, 1995 through November 30, 1996 in full settlement of a pending arbitration which would, therefore, be dismissed; (2) Defendant would pay Plaintiff a lump sum amount equivalent to the pay Plaintiff would have earned from December 1, 1996 through April 30, 1997 in settlement of the pending federal lawsuit which would, therefore, be dismissed; and (3) Defendant would submit to Plaintiff's attorney a list of the most current openings in the Chicago Public School system within Plaintiff's certification. The subsequent drafting of the written documents was only to memorialize the terms of the oral agreement; neither a written settlement document nor approval of the agreement by any non-party was a condition precedent to the final oral agreement. *See, e.g., Allstate Fin.*, 936 F.Supp. at 528 (N.D.Ill.1996); *Herron v. City of Chicago*, 618 F.Supp. 1405, 1409 (N.D.Ill. 1985).[4]

■ In response to Defendant's motion, Plaintiff first argues—relying on her own unsigned and unverified affidavit [5]—that she agreed to settle her case because she "felt" pressured by the Magistrate Judge. Duress or coercion is a ground for invalidating the terms of a settlement agreement. *See, e.g.,*

---

3. *See, e.g.,* 5/20/97 Transcript of Proceedings before the Magistrate Judge, p. 3.

4. This court's finding is consistent with the Magistrate Judge's pronouncements during proceedings held May 20, 1997. Therein, the Judge stated "as far as I was concerned there was a settlement reached on ... March 12th," and then—perceiving the raising of new, separate issues—further stated that the settlement was reached:

> after an extended settlement conference at which [attorney for Plaintiff's] client was present and after which time we went on the record. Everybody confirmed that there was an agreement. I am not going to let people renegotiate the agreement. There was an agreement. There is an agreement, and I am going to enforce it.

(*See* 5/20/97 Transcript of Proceedings at pp. 2, 4.)

Parenthetically, a related principle bears noting, in view of Plaintiff's argument, in essence, that the amount due Plaintiff was not determined at the time of the oral settlement agreement. That is: settlement agreements that do not explicitly resolve ancillary issues can nonetheless be enforceable. *Sheng v. Starkey Labs., Inc.*, 117 F.3d 1081, 1083 (8th Cir.1997). "The fact that the parties left some details for counsel to work out during later negotiations cannot be used to abrogate an otherwise valid agreement." *Id.* (*citing Worthy v. McKesson Corp.*, 756 F.2d 1370, 1373 (8th Cir.1985)).

5. An original signed affidavit is not attached at all to the response brief, or otherwise contained, in the official court file. Nonetheless, the court has chosen to consider Plaintiff's unexecuted affidavit, attached to her response, in an effort to give Plaintiff every benefit of the doubt in ruling on the present motion.

*Musgrove v. Petters,* No. 92 C 3267, 1992 WL 205858, at \* 2 (N.D.Ill. Aug.19, 1992). "Duress is defined as the imposition, oppression, undue influence or the taking advantage of the stress of another whereby one is deprived of the exercise of his free will." *Moore v. Cooper,* No. 94 C 788, 1996 WL 207187, at \*2 (N.D.Ill. April 24, 1996). The party asserting duress must prove the allegation by clear and convincing evidence. *Id.*

Plaintiff attempts to support her allegation of duress with the following expression in her affidavit: "[d]uring [the settlement conference], I felt that I was pressured by the judge to say yes to a settlement agreement. The judge made me feel like I could not go home and think about it—that I had to say yes on the spot." Plaintiff's generalized expression of subjective feeling is fatally conclusory and wholly unsupported by specific factual averments to support a claim of duress. Plaintiff's statement is not borne out by the record, in any event. Initially, two attorneys represented Plaintiff's interests at the settlement conference and the subsequent proceedings on the record that date: (1) Plaintiff's privately engaged counsel and (2) counsel for the Chicago Teachers Union (who represented Plaintiff in the arbitration). Moreover, and critically, as seen, neither Plaintiff nor Plaintiff's attorney ever raised this issue in the subsequent written memorialization correspondence to Defendant's attorney or in subsequent proceedings before the Magistrate Judge. In short, under the circumstances here, Plaintiff's conclusory statement alone falls well short of demonstrating by clear and convincing evidence that she was "deprived of the exercise of her free will."

■ Plaintiff's next and perhaps most revealing complaint here is that "it would be unfair to force Plaintiff to settle on terms with which she is unhappy." (Pl. Resp. at p. 2.) However, it is established law that "a mere change of mind is not sufficient grounds for setting aside a settlement agreement." *Moore v. Cooper,* No. 94 C 788, 1996 WL 207187, at \*2 (N.D.Ill. April 24, 1996).

As the Seventh Circuit has stated, "[a] party to a settlement cannot avoid the agreement merely because he subsequently believes the settlement insufficient[.] ... If a party to a ... suit who has previously authorized a settlement changes his mind ..., that party remains bound by the terms of the agreement." *Glass,* 788 F.2d at 454–55.

Plaintiff also contends that this court should not enforce the settlement because Defendant has failed to "help Plaintiff find a position" and that "Plaintiff's ability to get another job was part and parcel of the settlement negotiations." However, the court's review of the March 12, 1997 proceedings before the Magistrate Judge does not disclose that there was such an agreement between the parties. Instead, the record discloses that Defendant agreed to (and did twice) furnish Plaintiff with a list of vacant Chicago Public School positions. Indeed, in his March 14, 1997 letter, Plaintiff's attorney acknowledged that Defendant merely agreed that "when a principal tells Defendant that he or she wishes to hire Plaintiff, Defendant will approve the hiring. Of course, it will be Plaintiff's obligation to interview and get a principal to hire her." Thus, the record does not support, as Plaintiff contends, that Plaintiff's ability to get another job was "part and parcel of the settlement negotiations" or that Defendant has not complied with the settlement terms.

■ Plaintiff finally maintains that the written settlement documents contain some items which were not part of the parties' oral agreement. In its reply brief, Defendant characterizes these items as "boilerplate settlement agreement language" and states that it would be willing to consider different language. Although these items do not appear at first glance to be material, the court agrees with Plaintiff that the oral agreement reached between the parties on March 12, 1997 did not include these specific items. Therefore, although the parties' oral agreement noted earlier remains enforceable, this court cannot enforce the additional terms noted by Plaintiff.[6] *See, e.g., Dhaliwal v.*

---

6. Specifically, as averred by Plaintiff, the following items in the settlement documents were not agreed to by the parties and thus are stricken and considered deleted from the settlement documents: (1) a release of future board employees (p. 3, line 15); (2) indemnification for liens (p. 5, ¶ 9); (3) the second sentence of paragraph 10 of the settlement agreement with the Plaintiff, and (4) a statement that absolves Defendant of liabili-

*Woods Div.,* No. 86 WL 20375, 1990 WL 53163, at *4 (N.D.Ill. April 12, 1990), *aff'd,* 930 F.2d 547 (7th Cir.1991).

## CONCLUSION

For the reasons set forth above, this court grants Defendant's motion to enforce the settlement agreement on the terms recited, and here confirmed, at page 1130 of this opinion and order. Also confirmed and incorporated herein by reference as part of the settlement agreement are the proposed written settlement documents [7] (with the deletions set forth in footnote 6 of this opinion). *See, e.g., Dhaliwal,* 1990 WL 53163, at *4.

This court thus orders Defendant to tender payment of $90,977.05 to Plaintiff within 30 days, upon which payment the parties will be mutually and generally released from any and all claims that they may have against each other (excepting Defendant's aforedescribed responsibilities as to help facilitate Plaintiff's hiring). *See Allstate Fin.,* 936 F.Supp. at 529–30.

Accordingly, the cause is dismissed with prejudice. The court retains jurisdiction of the cause for 120 days to enforce the settlement terms as to Defendant's aforedescribed responsibilities to help facilitate Plaintiff's hiring. In this regard, Defendant is ordered to provide Plaintiff within thirty (30) days a current list of teacher vacancies in the Chicago Public Schools within Plaintiff's certification.

---

ty for actions arising indirectly out of the incidents alleged in Plaintiff's suit (p. 3, line 8).

**7.** These documents are contained at Defendant's Motion to Enforce Settlement Agreement, Ex. D.