**Betty Jean PORTER, Plaintiff,**

v.

**CHICAGO SCHOOL REFORM BOARD OF TRUSTEES, Defendant.**

No. 98 C 7616.

United States District Court, N.D. Illinois, Eastern Division.

Aug. 10, 1999.

Gary Brian Katz, Benjamin & Shapiro, Ltd., Chicago, IL, for plaintiff.

Kathleen Marie Gibbons, Bd. of Education of Chicago, Law Department, Marilyn F. Johnson, Taryn Springs, Sarah Ruth Carlin-Rosenblum, Chicago, IL, for defendant.

*MEMORANDUM OPINION AND ORDER*

LEVIN, United States Magistrate Judge.

At issue before the court is Defendant's, Chicago School Reform Board of Trustees ("the Board") Motion to Dismiss Plaintiff's, Betty Jean Porter ("Porter") Complaint pursuant to Fed.R.Civ. 12(b)(6). For the reasons set forth below, the Board's Motion is granted.

*BACKGROUND*

The following relevant facts are set forth in this court's prior opinion in the cause of November 19, 1997:

On September 5, 1996, Plaintiff, a teacher formerly employed by Defendant, filed this action against Defendant claiming that Defendant violated the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.,* and the Age Discrimination in Employment Act, 29 U.S.C. § 630(b) *et seq.* On March 12, 1997, the parties engaged in a pretrial

settlement conference before Magistrate Judge Morton Denlow. In attendance at the March 12 conference were Plaintiff, Plaintiff's attorney, an attorney from the Chicago Teachers Union (who represented Plaintiff in a related arbitration) and Defendant's attorneys. At the conclusion of the conference, the aforementioned parties conducted proceedings on the record before the Magistrate Judge.

On the record, the Magistrate Judge preliminarily stated, "as a result of the settlement conference the parties have arrived at a settlement of this litigation and also of a pending arbitration." At the Magistrate Judge's request, Defendant's attorney stated the monetary terms of the agreement: (1) that the Defendant Board would pay Plaintiff back pay from September 1, 1995 through November 30, 1996 in full settlement of a pending arbitration; and (2) that the Defendant Board would pay Plaintiff a lump sum amount equivalent to the pay Plaintiff would have earned from December 1, 1996 through April 30, 1997 in settlement of the pending federal lawsuit. In addition, Defendant agreed to submit a list of the most current openings in the Chicago Public School system within Plaintiff's certification to Plaintiff.[1]

Plaintiff's private counsel for the Chicago Teachers Union agreed to the settlement on the record. Plaintiff was present during the proceedings on the record. In her affidavit filed herein, Plaintiff expressly acknowledges that "I did agree to settle the case" at the subject settlement conference.

The next day, March 13, 1997, Defendant's attorney sent a letter to Plaintiff's attorney to "memorialize the settlement agreement reached yesterday." Attached to that letter was an organized list of teacher vacancies in the Chicago Public Schools.[2] The following day, March 14, 1997, Plaintiff's attorney wrote a responsive letter to Defendant's attorney essentially expressing his agreement with the terms of the settlement set forth in defense counsel's March 13, 1997 letter.

It is undisputed that the total amount due Plaintiff under the settlement conference is $90,977.05.[3]

*Porter v. Chicago Board of Education,* 981 F.Supp. 1129 (N.D.Ill.1997).

Plaintiff has once again plead the Counts of her 1996 Complaint, and she contends that the March 12, 1997 settlement agreement should be rescinded because it was procured through fraud or, in the alternative, because it was the product of mutual mistake. Specifically, she is complaining that in the Board's termination letter to her, the Board expressly stated that, in reliance upon Article 42–3 of the 1993–1995 collective bargaining agreement between the Board of Education of the City of Chicago and the Chicago Teachers Union ("the Board–Union Agreement"), Mrs. Porter was fired because of her status as a *reserve* teacher.[4] The Board represented at the March 12, 1997 settlement conference before Judge Denlow that Mrs. Porter was a *reserve* teacher. However, Mrs. Porter claims that contrary to the Board's representation, she was an *assigned* teacher at the time of her termination. Such status, she argues, would have conferred upon her, terms of employment different from those as a *reserve* teacher, in regards to the terms upon which she could be fired. Specifically, she claims that as an *assigned* teacher, the termination provisions of Article 42–3 of the agreement between the Board and the Union, relied upon by the Board in terminating her, were inapplicable. Accordingly, Plaintiff argues that the Board could not have fired her for the basis set forth in her termination letter. (*See* Pl.Resp. at 2.)

---

1. The parties agree that this entailed sending a vacancy listing to Plaintiff and that, in the event a principal wanted to hire Plaintiff, the Defendant would approve Plaintiff's hiring.

2. On April 22, 1997, Defendant provided Plaintiff with another list of vacant teaching positions in the Chicago Public Schools.

3. *See, e.g.,* 5/20/97 Transcript of Proceedings before the Magistrate Judge, p. 3.

4. The relevant portion of the Board–Union Agreement provides that: [i]f 25–school months after a teacher is declared to be *reserve,* such teacher has not been appointed to a permanent position, the teacher shall be honorably terminated from service. (Emphasis added.)

### *ANALYSIS*

The Board has filed a Motion to Dismiss Plaintiff's Complaint for failure to state a claim. Plaintiff requests this court to rescind the settlement agreement that she entered into with the Board for one of two independent bases. On the one hand, Plaintiff asserts that the Board engaged in fraud when it represented, up through the time the settlement agreement was enforced, and for 120 days thereafter during which the court retained jurisdiction, that Plaintiff was a *reserve* teacher. (*See* Pl.Resp. at 3.) In the alternative, Plaintiff alleges that the settlement agreement should be rescinded because both parties were under the mistaken belief that Plaintiff was a *reserve* teacher (not an *assigned* teacher) at the time of settlement agreement was enforced and for the 120–day period thereafter.

Defendant has argued a number of grounds in support of its Motion to Dismiss.[5] It is necessary, however, to address only the issue as to whether Plaintiff has properly complied with the requirements of Fed. R.Civ.P. 60(b).

### I.  RULE 60(B)

Rule 60(b) of the Federal Rule of Civil Procedures states:

(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc. On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, re-leased or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in Title 28 U.S.C. § 1655, or to set aside a judgment for fraud upon the court. . . .

It is undisputed by the parties that Plaintiff's only avenue of relief in this independent action is via Fed.R.Civ.P. 60(b). Rule 60(b) is the only means of obtaining relief from a judgment. *See United States v. Beggerly,* 524 U.S. 38, 118 S.Ct. 1862, 1866, 141 L.Ed.2d 32 (1998).

Plaintiff's claims of mutual mistake and fraud are covered by 60(b)(1) and (3), respectively. Pursuant to the explicit language of Rule 60(b), a motion under 60(b)(1), (2) or (3) must be made within one year after a judgment or order is entered or taken. In this case, the court enforced the settlement agreement and entered judgment thereon on November 19, 1997[6], but Plaintiff's complaint was not filed until November 25, 1998. Therefore, Plaintiff has not satisfied the one-year limitation and Plaintiff's only course of relief thus is to proceed under the "saving clause" of Rule 60(b).

### II.  The Saving Clause of Rule 60(b)

The "saving clause" of Rule 60(b) provides that "[t]his rule does not limit the power of a court to entertain an independent action . . .

---

**5.** In addition to a number of other grounds, Defendant argues that Plaintiff, who was represented by counsel, lacked due diligence in advancing her legal theory prior to her agreement to settle and that Plaintiff improperly attempts to convert an alleged legal position as to reserve status taken by the Defendant in the underlying proceeding into fraudulent conduct.

**6.** The parties agreed to settle the cause, earlier, on March 12, 1997.

to set aside a judgment...." Fed.R.Civ.P. 60(b). It is applied when the right to make a motion under 60(b) is lost by the expiration of the time limits fixed in the rule. The advisory committee notes to Rule 60(b) state that in such a case, "the only other procedural remedy is by a new or independent action to set aside a judgment...."

### III. Rule 60(b) Savings Clause's "Grave Miscarriage Of Justice" Standard

■ The United States Supreme Court, in *United States v. Beggerly*, 524 U.S. 38, 118 S.Ct. 1862, 141 L.Ed.2d 32 (1998), explicitly set forth the standard by which an independent action such as this, under Rule 60(b), should be analyzed. In *Beggerly*, the Court considered whether the federal government's failure to furnish relevant information in discovery allowed the plaintiffs to file an independent action subsequent to settlement. The Supreme Court found that the government's conduct was arguably the basis of a Rule 60(b)(3) motion.[7] *Id.* However, the Supreme Court expressly held that the grounds for bringing an independent action under Rule 60(b) must exceed the same grounds available under Rule 60(b)(3). Otherwise, "the strict 1–year time limit would be set at naught." *Id.* at 1867. The Court went on to express that:

> [i]ndependent actions must, if Rule 60(b) is to be interpreted as a coherent whole, be reserved for those cases of 'injustices which, in certain instances, are deemed sufficiently gross to demand a departure' from rigid adherence to the doctrine of *res judicata*.

*Id.* (*quoting Hazel–Atlas Glass Co. v. Hartford–Empire Co.,* 322 U.S. 238, 244, 64 S.Ct. 997, 1000, 88 L.Ed. 1250 (1944)). The Court concluded by ruling that an independent action under Rule 60(b) is available "only" to "prevent a grave miscarriage of justice." *Beggerly,* 118 S.Ct. at 1868.

Plaintiff asserts herein that the Board engaged in fraud when it represented that she was a *reserve* teacher. (*See* Pl.Resp. at 3.) Without making any determination as to whether Plaintiff's fraud allegations would be sufficient to meet the standard required by Rule 60(b)(3), it is clear, that Plaintiff's allegations fall short of *Beggerly's* heightened "grave miscarriage of justice" standard required for an independent action. Even prior to *Beggerly*, regarding Rule 60(b) independent actions, it was established that "fraud cognizable to maintain an untimely independent attack upon a valid and final judgment has long been regarded as requiring more than common law fraud." *Geo. P. Reintjes Co., Inc. v. Riley Stoker Corp.,* 71 F.3d 44, 48 (1st Cir.1995). *See also, Chicago, R.I. & P. Ry. v. Callicotte,* 267 F. 799, 810 (8th Cir. 1920), *cert. denied,* 255 U.S. 570, 41 S.Ct. 375, 65 L.Ed. 791 (1921) ("indispensable" element of independent attack on judgment for fraud is that it prevented party from presenting his case); *Aetna Casualty & Surety Co. v. Abbott,* 130 F.2d 40, 43–44 (4th Cir.1942) ("it is well settled that [a conspiracy between plaintiff and his witnesses to present perjured testimony] constitutes no ground" upon which court could deny enforcement of judgment in an independent proceeding); *Gleason v. Jandrucko,* 860 F.2d 556, 558 (2nd Cir.1988) (fraud necessary to sustain independent action is narrower than that which is sufficient to obtain relieve by timely motion). If "fraud" that forms the basis of an independent action under Rule 60(b)'s saving clause is not confined to the proper limits, but rather is expanded to include "all or substantially all species of fraud within 60(b)(3) than the time limitation upon 60(b)(3) motions will be meaningless." *Moore,* 7 Federal Practice, ¶ 60.33.

Plaintiff's claim amounts, at best, to "common law fraud" which, as discussed, does not qualify for relief under the heightened independent action standard of Rule 60(b)'s saving clause.[8]

---

**7.** As seen, Rule 60(b)(3) allows relief of judgment for "fraud ... misrepresentation, or other misconduct of an adverse party...."

**8.** Too, no cases were sited to support an independent Rule 60(b) action based on mistake. In any

event, it is clear, based on the discussion above, that Plaintiff's mistake argument also does not qualify for relief under the recited, heightened independent action standard(s) of Rule 60(b).

## CONCLUSION

In view of the foregoing, this court grants Defendant's Motion to Dismiss Plaintiff's Complaint pursuant to Fed.R.Civ.P. 12(b)(6).[9]

9. In view of the court's decision, it is not necessary to address the other grounds for dismissal raised by the Defendant.

Defendant's prayer for attorney's fees, pursuant to 28 U.S.C. § 2412, is denied.