In re Christopher N. BABCOCK,
Brenda G. Babcock,
Debtors.

Bankruptcy No. 98–30206–T.

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Jan. 9, 2001.

Laura Taylor Alridge, Carl M. Bates, G. Russell Boleman, III, Mark C. Leffler, Boleman Law Firm, P.L.C., Richmond, VA, for Debtors.

Terry L. Van Horn, Richmond, VA, Former Counsel for Debtors.

Bruce H. Matson, LeClair Ryan, P.C., Richmond, VA, Chapter 7 Trustee.

Gregg R. Nivala, Office of U.S. Trustee, Richmond, VA, Assistant U.S. Trustee.

### MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Chief Judge.

Hearing was held on September 27, 2000, on debtors' motions for contempt and to reinstate their chapter 7 discharge. Debtors allege that because of the gross negligence of their former counsel, Terry L. Van Horn, they lost property that otherwise could have been exempted under a homestead deed or similar exemption filings. Further, debtors maintain that Van Horn continually failed to defend them and to cooperate with the trustee and bankruptcy court, which had a detrimental impact on debtors' ability to protect their property and receive a discharge. At conclusion of hearing, the court took both motions under advisement.

The court will grant debtors' motion for contempt and will award debtors monetary sanctions in the amount of $2,563.00 (in addition to the sum of $450.00 Van Horn was ordered to pay debtors on June 22, 2000). Unfortunately, the court finds no basis to reinstate debtors' chapter 7 discharge.

### I. *Findings of Fact*

On June 1, 2000, debtors filed a motion to determine whether fees they had paid to Van Horn exceeded the reasonable value of legal services he provided. Van Horn filed no response, and on June 22, 2000, the court entered an order finding that Van Horn's compensation exceeded the reasonable value of his services. Consequently, the court ordered Van Horn to return the $450.00 paid to him by debtors. To date, Van Horn has failed to comply with this order.

The debtors, through new counsel, the Boleman Law Firm, now allege that they contacted Van Horn for purposes of obtaining advice about bankruptcy options and that they retained Van Horn to prepare and file a chapter 7 bankruptcy petition, schedules, statement of affairs, and statement of intent. They assert also that the scope of Van Horn's employment as their counsel included scheduling of debtors' property and potential exemptions of such property, advisement and representation of debtors at the first meeting of creditors, and representation on all mat-

ters related to administration of debtors' chapter 7 case. Debtors paid Van Horn a $450.00 retainer.

Debtors' chapter 7 petition was filed on January 13, 1998, and listed a 1989 Ford Explorer Pickup, joint checking account, 1997 tax refunds, life insurance policy with cash value, a 1988 Honda V–Twin Motorcycle, and a 19 hp riding lawn tractor as assets. The total value of debtors' scheduled assets was approximately $14,300.00.

On March 3, 1998, the trustee filed an objection to debtors' claimed exemptions. When debtors received the objection, they promptly contacted Van Horn, who assured debtors that he would respond to trustee's objection. The trustee repeatedly attempted to contact Van Horn concerning the objection, and after receiving no response to the objection or to trustee's letters or phone calls, the trustee wrote debtors instructing them to park the vehicles and advise trustee of the vehicles' location. Debtors immediately contacted Van Horn, who informed debtors that they did not have to heed the trustee's instructions and that he would contact the trustee directly to resolve the matter.

Two hearings were held on trustee's objection, and Van Horn failed to appear at either hearing despite receiving proper notice for both hearings. Van Horn also failed to file a response to trustee's objection. Van Horn instructed debtors not to appear at hearings. The court entered an order denying debtors claimed exemptions on March 18, 1999.

On March 31, 1999, debtors attended a Rule 2004 examination, at which time they fully cooperated with the trustee and testified under oath that Van Horn, as their counsel, had advised them not to abide by trustee's directions and requests. The trustee filed a complaint on July 13, 1999, seeking turnover of assets of debtors and monetary damages. Van Horn did not file an answer to trustee's complaint.

As a result, the trustee filed a motion for default. Hearing was held on September 22, 1999 on trustee's motion for default, at which Van Horn was present and testified. The court subsequently entered an order on November 23, 1999, revoking debtors' chapter 7 discharge and granting judgment in favor of the trustee for $14,300.00, as well as awarding monetary sanctions against the debtors in the amount of $4,527.60.

In the present action the debtors ask the court to reinstate their discharge under chapter 7, to hold Van Horn in contempt for his violation of the court's June 22, 2000, order awarding them sanctions of $450.00, and to allow debtors to recover their new attorney's fees and costs associated with prosecuting these motions in the amount of $2,563.00, as further sanctions against Van Horn. In summary, debtors allege that Van Horn's gross negligence, inadequate representation, and failure to cooperate with the chapter 7 trustee resulted in debtors' discharge being revoked and the money judgment entered against them for $14,300.00, plus sanctions of $4,527.60.

## II. *Conclusions of Law*

### A. Motion to Reinstate Debtors' Chapter 7 Discharge.

■ Debtors find themselves in an unfortunate situation. Their discharge in bankruptcy was revoked as a direct result of their following the advice of their bankruptcy counsel to disregard the instructions of the trustee in bankruptcy. That counsel's advice was truly incredible and can only be attributed to gross incompetence. While the court recognizes the debtors' difficult plight, the Federal Rules of Civil and Bankruptcy Procedure offer only a limited scope for relief.

Debtors cite Fed. R. Bankr.P. 9024 and Fed. R Civ. Pro. 60(b)(6) as authority for seeking relief from this court's prior order revoking their discharge on November 23, 1999. They also cite *Boughner v. Secre-*

*tary of Health, Educ. & Welfare* [1] as additional authority for their motion.[2] Rule 60(b)(6) governs relief from judgment or orders, including within the context of bankruptcy. *See* FED. R. BANKR. P. 9024. Specifically, Rule 60(b) permits the court to relieve a party from a final judgment, order or proceeding upon motion for a number of reasons, including the catchall provision in subsection (6) that reads, "[for] any other reason justifying relief from the operation of the judgment."

 Because of Rule 60(b)'s wide expanse of remedies, the rule is to be applied sparingly: "[i]t has generally been held that a Rule 60(b) motion, at least in the context of bankruptcy cases, is an extraor-

dinary remedy...." 10 COLLIER ON BANKRUPTCY ¶ 9024.05 (Lawrence P. King, ed., 15th rev. ed.) (2000). Courts have indicated that the circumstances must be extraordinary in order to warrant such relief, so as to "avoid this Rule's being interpreted as conferring a[ ] 'standardless residual of discretionary power to set aside' [ ] court orders." *In re Rex*, 217 B.R. at 63 (citations omitted); *see also In re Schwinn Bicycle Co.*, 248 B.R. 328, 333 (Bankr.N.D.Ill.2000) (quoting that "Rule 60(b)(6) relief is an extraordinary remedy and is granted only in exceptional circumstances") citing *Dickerson v. Board of Educ.*, 32 F.3d 1114, 1116 (7th Cir.1994); *Stradley v. Cortez*, 518 F.2d 488, 493 (3d

---

1. 572 F.2d 976 (3d Cir.1978).

2. In *Boughner*, the Third Circuit encountered a factual scenario outside the context of bankruptcy that involved six appeals (consolidated) from denial by the trial court of a motion to vacate summary judgment in favor of the Secretary of Health, Education and Welfare (HEW). The Third Circuit reversed the judgment of the district court and remanded the case, holding that the evidence warranted vacating the summary judgments under Rule 60(b)(6).

The facts of *Boughner* are unique and worthy of brief recitation. A Pennsylvania attorney who was campaigning for a local judgeship, had an administratively understaffed office, and was tremendously backlogged in his caseload, formerly represented six clients (appellants) in their HEW cases. In all six cases, as well as 46 others against HEW, and at least one against the Social Security Administration, the attorney failed to oppose motions for summary judgment that led to default judgments against his clients. The attorney's collective failure to file a responsive pleading in 52 cases was found sufficient to justify relief under Rule 60(b)(6). The court considered that cumulative level of negligence to be "egregious conduct" that "amounted to nothing short of leaving his clients unrepresented." *Boughner*, 572 F.2d at 977 (finding that the attorney's conduct "indicates neglect so gross that it is inexcusable.").

Comparing Van Horn's conduct in debtors' case to that of the attorney in the *Boughner* case, the court is unable to find the two attorney's actions substantially similar. Here, the facts indicate a failure on the part of Van

Horn to appear at the two hearings on the trustee's objection to debtors' claimed exemptions and to file a responsive pleading to the trustee's objection to exemptions and complaint seeking turnover of assets and monetary damages. The court notes in movants' pleadings, however, that Van Horn did appear at the hearing held on trustee's motion for default, as well as file debtors' petition and attempt to exempt some of debtors' assets.

The court also observes that the relationship between debtors and their former counsel was voluntary and based on debtors' freedom to select suitable counsel. Significantly, this argument of upholding an otherwise unfortunate penalty against an attorney's client because the client freely selected the attorney and thus cannot avoid the consequences of the acts or omissions of that attorney has been advanced successfully in at least two landmark U.S. Supreme Court cases. *See Link v. Wabash Railroad Co.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962) and *Smith v. Ayer*, 101 U.S. (11 Otto) 320, 326, 25 L.Ed. 955 (1879).

Notwithstanding the fact that only information relating to Van Horn's treatment of debtors' case is provided here in debtors' pleadings and arguments, the court is unable to infer that Van Horn's treatment of debtors' case is comparable to the collective misconduct and negligence of the attorney in the *Boughner* case in a large number of nearly identical cases. Thus, this court is unpersuaded by the case law authority cited by debtors to justify application of the extraordinary remedy available under Rule 60(b)(6). The court is therefore unwilling to vacate its November 23, 1999, order revoking debtors' discharge and subsequently reinstate that discharge.

Cir.1975) (stating that "Rule 60(b)(6) is available only in cases evidencing extraordinary circumstances..."); *In re Olympia Holding Corp.*, 216 B.R. 1004, 1006 (Bankr.M.D.Fla.1998) (highlighting that "...relief pursuant to Rule 60(b)(6) may only be granted in exceptional or extraordinary circumstances") (citations omitted). Furthermore, the standard required to find relief appropriate under an independent Rule 60(b) action is extremely high, in that the action is "only available to prevent a grave miscarriage of justice." *In re Schwinn*, 248 B.R. at 333 (depicting the standard as "demanding"), *citing United States v. Beggerly*, 524 U.S. 38, 47, 118 S.Ct. 1862, 141 L.Ed.2d 32; *Porter v. Chicago School Reform Bd. of Trustees*, 187 F.R.D. 563, 566 (N.D.Ill.1999).

In those few cases in which movants are able to meet the hurdle of establishing that extraordinary circumstances exist, the movants are determined to be completely without fault for their predicaments and "almost unable to have taken any steps that would have resulted in preventing the judgment from which relief is sought." *In re Rex*, 217 B.R. at 63 (citation omitted). The U.S. Supreme Court has held that "any degree of voluntary or culpable action on the part of the movant will preclude Fed.R.Civ.P. 60(b)(6) relief." *Id.*, *citing Ackermann v. United States*, 340 U.S. 193, 199–202, 71 S.Ct. 209, 95 L.Ed. 207 (1950). The facts of this case indicate that debtors did not attend hearings or cooperate with the trustee, on the advice of former counsel. On some level, debtors must assume at least a minimal degree of culpability for their actions during the administration of their case, despite receiving poor legal advice. Further, the courts finds that debtors must have realized this duty when they attended and fully cooperated with the trustee at the Rule 2004 examination.

Additionally, in 1993, the U.S. Supreme Court similarly made it clear that "a client is held accountable for the actions and omissions of his counsel." *In re Rex*, 217 B.R. at 62–63, *citing Pioneer Inv. Serv.*

*Co. v. Brunswick Assoc., L.P.*, 507 U.S. 380, 393, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). Courts regret the unfortunate outcome "where the client is the innocent victim of a blunder by counsel" but cannot overlook the inescapable conclusion that "...[Rule] 60(b)(6) is [an] inappropriate" remedy for overcoming such seeming injustices. *In re Rex*, 217 B.R. at 62 (citation omitted). Therefore, not surprisingly, relief under Rule 60(b)(6) has largely been confined to cases where orders were entered with no notice to movant, undiscovered fraud of a third party, or when movant's health or incarceration prevented participation. The facts of this case simply do not fit within the parameters of those articulated scenarios, and the court finds no cause to enlarge the scope of Rule 60(b)(6)'s application.

Finally, "[the] party seeking such relief must bear a heavy burden of showing circumstances so changed that ... absent such relief, an 'extreme' and 'unexpected' hardship will result." *Mayberry v. Maroney*, 558 F.2d 1159, 1163 (3d Cir. 1977), *citing United States v. Swift*, 286 U.S. 106, 119, 52 S.Ct. 460, 76 L.Ed. 999 (1932). Thus, movants under Rule 60(b)(6) must meet a two-fold burden: (1) establishing the existence of extraordinary factual circumstances; and (2) showing that extreme hardship will result if relief is not afforded them.

Applying the standard required for relief under Rule 60(b)(6) to the facts of this case, the court is unable to find that movants have met their burden of showing unfair prejudice and "exceptional or extraordinary circumstances" necessary to grant Rule 60(b)(6) relief. *In re Olympia*, 216 B.R. at 1006. In terms of prejudice, the court finds that movants are not "unfairly prejudiced" because they are in no way precluded from initiating a state court malpractice action, regardless of the ruling of this court. As to the "extraordinary circumstances," the court is unable to find that movants have met this burden on the current showing of facts made in pleadings

and argument. Therefore, the court is unable to grant debtors' motion for reinstatement of their prior chapter 7 discharge under the extraordinary remedial provisions of Rule 60(b)(6).

In summary, while the court sympathizes with debtors' situation, the court reached the correct result in revoking their discharge and finds no basis in procedural law to reach a different outcome.

## B. Debtors' Motion for Contempt and Sanctions Against Former Counsel.

 Debtors cite no additional authority in their pleadings as a basis for the motion for contempt against their former counsel. Federal Rule of Bankruptcy Procedure 9011 is the statutory equivalent of Fed. R.Civ.P. 11, both of which authorize courts to impose monetary sanctions against parties (including attorneys) who make improper representations, submit improper filings, or otherwise conduct themselves unprofessionally before the court. By its own terms, Rule 9011 permits a court to impose sanctions on its own initiative or upon the motion of a party, such as the "opposing litigant injured by the violation." *In re Palumbo Family Ltd. P'ship*, 182 B.R. 447, 473 (Bankr.E.D.Va.1995).[3]

 Courts may look to case law interpreting Rule 11 when deciding cases under Bankruptcy Rule 9011. *See In re Weiss*, 111 F.3d 1159, 1170 (4th Cir.1997); *In re Atlas Machine & Iron Works, Inc.*,

190 B.R. 796, 806 (Bankr.E.D.Va.1995). According to Fourth Circuit case law, in deciding whether an attorney has violated duties to the court or his client under Rule 9011, bankruptcy courts must apply an objective standard of reasonableness, rather than an assessment of the party's subjective intent. *See id.; see also Robeson Defense Comm. v. Britt (In re Kunstler)*, 914 F.2d 505, 514 (4th Cir.1990). The inquiry focuses on whether a reasonable attorney in like circumstances could believe his actions were factually or legally justified. *See Cox v. Saunders (In re Sargent)*, 136 F.3d 349 (4th Cir.1998). A violation of Rule 9011 does not require subjective bad faith. *See Yagman v. Republic Ins.*, 987 F.2d 622 (9th Cir.1993); *Corporate Printing Co. v. New York Typographical Union*, 886 F.Supp. 340 (S.D.N.Y. 1995).

 "Courts have broad discretion in selecting appropriate contempt sanctions[,]" such as those requested by debtors in this case. *In re Computer Dynamics, Inc.*, 253 B.R. 693, 698 (E.D.Va.2000). Indeed, bankruptcy courts may issue any order or judgment necessary or appropriate to enforce or implement court orders or rules. *See* 11 U.S.C. § 105(a). The scope of section 105 includes the grant of power to the bankruptcy courts to hold attorneys in civil contempt. *See In re Computer Dynamics*, 253 B.R. at 699.

---

**3.** However, at least one court in the Eastern District of Virginia has found that "[f]ormer clients have other avenues available, such as a malpractice suit, if they seek to redress the harm caused by attorney misconduct." *In re Palumbo*, 182 B.R. at 473–74 (Bostetter, J). Further, former Chief Judge Bostetter held that "a claim for malpractice arises when the attorney breaches a duty owed to the client ... [while i]n contrast, the responsibilities connected with Rule 11 stem from a duty owed to the court." *Id.* at 474. Further, Chief Judge Bostetter indicated that Rule 11 provided no federal cause of action available to remedy legal malpractice: "[w]e therefore hold that Rule 9011 is unavailable to former clients...." *Id., citing Weiss v. Johnson (In re Rolls Constr. Corp.)*, 108 B.R. 807, 808–09

(Bankr.S.D.Fla.1989) (holding similarly that clients may not seek Rule 11 sanctions against their attorneys).

Notwithstanding the prohibition against seeking relief from alleged attorney malpractice by Rule 11 motions filed with bankruptcy courts, the *Palumbo* opinion does include a discussion of the U.S. Supreme Court's *Chambers v. NASCO, Inc.* decision, which states that neither Rule 11 nor any other statute has displaced the inherent power of courts to impose sanctions for attorney misconduct. *See* 501 U.S. 32, 46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). In *Palumbo*, the bankruptcy court articulated the recognized power of courts to hold a party in contempt for violating an order, according to the authority set forth in the *Chambers* case.

Significantly, some bankruptcy courts, including one division in the Eastern District of Virginia have even used this same civil contempt power to suspend attorneys from practicing before them until the attorneys complied with orders to remit previously-collected legal fees. *See id.* at 693; *In re Assaf,* 119 B.R. 465, 467–68 (E.D.Pa.1990) (suspending an attorney from practicing before the court until he complied with the order to remit fees collected for legal services); *In re Statmore,* 176 B.R. 512, 515 (D.Neb.1994) (suspending attorney from practice in bankruptcy court for failure to pay under a disgorgement order).

Similarly, this case involves the issue of legal fee disgorgement and has not yet reached the more drastic proposed remedy of attorney suspension. More specifically, in pleading, debtors assert their desire to have the court find "Van Horn in contempt of the court's order dated June 22, 2000[, ... and] request that the court allow the Babcocks to recover, as sanctions against [ ] Van Horn, their attorney's fees and costs, in the amount of $2,563.00, necessary to litigate this action." (Debtors' Motions for Contempt & Discharge Reinstatement, p. 4, ¶ 5).

After examination of applicable statutory authority, case law, pleadings and argument, the court is persuaded that debtors have met their burden for prevailing on their contempt motion and will grant the motion for contempt against Van Horn in debtors' favor. Unlike the nearly insurmountable, narrowly-construed barriers associated with obtaining extraordinary relief from former judgments under Rule 60(b)(6), the court broadly construes inherent statutory powers and overall discretion to sanction and hold parties in contempt. The court therefore finds Van Horn to be in continued violation of the court's June 22, 2000, order and will direct him in a separate order to immediately pay $3,013.00 to debtors, as monetary sanctions. Part of the $3,013.00, $450.00 is to serve as repayment of legal fees the court previously disgorged in the June 22, 2000, order. The remainder of the $3,013.00 comprises an additional award of $2,563.00 in monetary sanctions against Van Horn for his negligent administration of debtors' chapter 7 case and serves as repayment of new attorney's fees and costs debtors have incurred to litigate these motions.

A separate order consistent with this memorandum opinion will be entered.